## WESTERN UNION TELEGRAPH COMPANY *v.* COMMERCIAL MILLING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 15. Argued October 26, 1910.—Decided November 28, 1910.

Intercourse between the States by telegraph is interstate commerce. *Telegraph Co.* v. *Texas,* 105 U. S. 460; *Western Un. Tel. Co.* v. *Pendleton,* 122 U. S. 347.

While a state statute which imposes positive duties and regulates the performance of business of a telegraph company is void as a direct regulation of interstate commerce, as decided in *Western Un. Tel. Co.* v. *Pendleton,* 122 U. S. 347, a statute which imposes no addi-

tional duty but gives sanction only to an inherent duty and declares, as to a public service, the public policy of the State, does not entail any burden on interstate commerce and is not void under the commerce clause of the Constitution of the United States.

Public service corporations are subject to police regulation, and while the police power is not unlimited it does include provisions, in pursuance of the public policy of the State, against such a corporation limiting its liability. for its own negligence, and a statute to that effect does not deprive the public service corporation affected thereby of its property without due process of law.

A classification of telegraph companies in a statute prohibiting limitation of liability is reasonable and does not deny equal protection of the law to telegraph companies because it does not apply to common carriers.

The statute of Michigan of 1893, fixing the liability of telegraph companies for non-delivery of messages at the damages sustained by the sender, is not, as applied to interstate messages, unconstitutional as a burden on, or regulation of, interstate commerce, or as depriving telegraph companies of their property without due process of law or denying them the equal protection of the laws.

The common law does not become a part of the law of a State of its own vigor but is adopted by constitutional provision, statute or decision; it expresses the policy of the State for the time being only and is subject to be changed by the power that adopted it. It has no efficacy that the statute changing it does not possess.

Whether a prohibition affecting interstate commerce as construed by the highest court of a State rests on the common-law liability or on a statute of that State makes no difference in determining its validity under the Constitution of the United States.

151 Michigan, 425, affirmed.

THIS is an action for damages for failure to deliver a telegram given to the telegraph company at Detroit, Michigan, to be delivered at Kansas City, Missouri.

On August 15, 1904, the milling company was offered ten thousand bushels of wheat, of a certain kind, at $1.01 a bushel, for immediate acceptance. The telegram in controversy was sent to accept the offer. It was promptly transmitted by the company to its relay station at Chicago within a minute or two after it was filed at Detroit. What became of it afterwards is not shown; it

was not delivered. On the face of the telegram were the following words: "Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to." One of the conditions referred to was this: "It is agreed . . . that the said company shall not be liable . . . for non-delivery of any unrepeated message beyond the amount received for the same." Fifty times the amount received for the message was fixed as the damages for non-delivery in case of its repetition, and there was a provision for insurance upon the payment of a premium.

The case was tried to a jury and the milling company gave evidence of the above facts and of its damages. The telegraph company offered no evidence. The telegraph company asked certain instructions, which, to understand, the statute of the State in regard to telegrams must be given. It is entitled "An act to prescribe the duties of telegraph companies incorporated, either within or without this State, relative to the transmission of messages, and to provide for the recovery of damages for negligence in the performance of such duties." Laws of 1893, No. 195, p. 312. Section 1 of the act provides as follows:

"SEC. 1. The people of the State of Michigan enact that it shall be the duty of all telegraph companies incorporated either within or without this State, doing business within this State, to receive dispatches from and for other telegraph companies' lines and from and for any individual, and on payment of the usual charges for individuals for transmitting dispatches as established by the rules and regulations of such telegraph company, to transmit the same with impartiality and good faith. Such telegraph companies shall be liable for any mistakes, errors or delays in the transmission or delivery or for the non-delivery of any repeated or non-repeated message, in damages to the amount which such person or persons may sustain by reason of the mistakes, errors or delays in the transmission

or delivery, due to the negligence of such company; or for the non-delivery of any such dispatch due to the negligence of such telegraph company or its agents, to be recovered with the costs of suit by the person or persons sustaining such damage."

As to the statute, the telegraph company requested the court to instruct the jury (1) that it did not prohibit a contract like the one made by the parties; (2) the milling company must recover on the contract or not at all; (3) the message was interstate commerce and the statute cannot be held to apply to it. If the statute be held to be prohibitory it is void as an attempted regulation of interstate commerce, in violation of the interstate commerce clause of the Constitution of the United States.

The court refused the instructions, and expressed in its charge to the jury a view antagonistic to the propositions of law expressed in them. A verdict was rendered for the milling company in the sum of $960. The telegraph company moved for a new trial, repeating the propositions expressed in the instructions, and added the further ground that the statute, when construed as prohibiting contracts between persons *sui juris*, is in violation of the Fourteenth Amendment to the Constitution of the United States. Judgment was entered on the verdict, which was affirmed by the Supreme Court of the State by a divided court.

*Mr. Rush Taggart*, with whom *Mr. C. D. Joslyn, Mr. George H. Fearons* and *Mr. Henry D. Estabrook* were on the brief, for plaintiff in error:

There was an express contract, the terms of which, if valid, would defeat any recovery by the milling company.

This court, and the Supreme Court of Michigan, have said that the conditions imposed by this contract are reasonable and binding whether the sender's attention was directed to them or not. *Primrose* v. *West. Un. Tel.*

*Co.,* 154 U. S. 1; *Birkett* v. *West. Un. Tel. Co.,* 103 Michigan, 361.

The Michigan statute so construed as to include interstate messages violates the commerce clause of the Federal Constitution.

With regard to interstate commerce, States in the exercise of their police power may not directly interfere with it, but, in caring for the health, safety and welfare of the people within their boundaries, they may adopt legislation which incidentally affects interstate commerce, but they have not any control over interstate commerce beyond their own boundaries. *West. Un. Tel. Co.* v. *Pendleton,* 122 U. S. 347, can be distinguished. And see *West. Un. Tel. Co.* v. *Chiles,* 214 U. S. 274; *Walling* v. *Michigan,* 116 U. S. 455; *Wilton* v. *Missouri,* 91 U. S. 275, 282; *County of Mobile* v. *Kimball,* 102 U. S. 691, 697; *Brown* v. *Houston,* 114 U. S. 622, 631; *Wabash Ry. Co.* v. *Illinois,* 118 U. S. 577.

*West. Un. Tel. Co.* v. *James,* 162 U. S. 650, applies only when confined to intrastate messages. Nor do *Pennsylvania Ry. Co.* v. *Hughes,* 191 U. S. 477; *Chicago & Mil. Ry. Co.* v. *Solan,* 169 U. S. 133, govern this case as they might had it been for damages resulting from negligence of the telegraph company in Michigan. In those cases it was simply attempted to enforce the laws of the State within its own borders, while in the case at bar an attempt is made to give the effect of a state statute beyond the borders of the State.

The statute in this case, as construed by the Supreme Court of Michigan, is a regulation of interstate commerce. *Prima facie,* therefore, it is invalid.

The statute cannot be said to be confined in its scope to the enforcement of the performance of duty owed by the company under the general law; in both cases it is a direct discouragement, obstruction and impediment to interstate commerce which Congress has not seen fit to permit.

The statute, as construed, violates the Fourteenth Amendment by abridging privileges and immunities of citizens of the United States. It deprives the telegraph company and the persons with whom it does business of their liberty and property, without due process of law.

While the police power of a State over the right of contract cannot be defined, there is a limit somewhere and its exercise must be for some public good and must be reasonable. *Lochner* v. *New York,* 198 U. S. 45, 56; *Primrose* v. *West. Un. Tel. Co.,* 154 U. S. 1; *Birkett* v. *West. Un. Tel. Co.,* 103 Michigan, 361. The attempted prohibition of such a contract by the legislature is unreasonable and beyond its power.

The statute denies to the telegraph company and the persons with whom it does business the equal protection of the laws. Express companies and other common carriers can limit their liability. *Smith* v. *Am. Express Co.,* 108 Michigan, 572, 578; *Mich. Central Ry. Co.* v. *Hale,* 6 Michigan, 243; *Dorr* v. *N. J. Steam Navigation Co.,* 1 Kern. 493; *McMillan* v. *M. S. & N. Ry. Co.,* 16 Michigan, 109.

Contracts of this nature generally are not, in Michigan, void as against public policy. Express companies, railroad companies, telephone companies and telegraph companies are all of the same nature in that they are *quasi*-public utilities. Telegraph companies in this State are not common carriers, and it has been recognized both by this court and by the Supreme Court of Michigan that public policy requires of them not a greater but a lesser liability than in the case of common carriers. See *Hadley* v. *Baxendale,* 9 Exch. 345.

*Mr. Ralph B. Wilkinson* for defendant in error:

In the absence of congressional legislation upon the subject, the State may require a common carrier, although in the execution of a contract for interstate car-

riage, to use great care and diligence in the carrying of passengers and the transportation of goods and to be liable for the whole loss resulting from negligence in the discharge of its duties. *Penna. R. R. Co.* v. *Hughes*, 191 U. S. 479; *West. Un. Tel. Co.* v. *James*, 162 U. S. 650; *West. Un. Tel. Co.* v. *Pendleton*, 122 U. S. 347; *Chicago, M. & St. P. R. Co.* v. *Solan*, 169 U. S. 133.

Although this court has not directly passed upon the precise question presented in the case at bar in any suit where a telegraph company has been party to the action, the *Hughes case* is on all fours with this present case. As to the question, involving telegraph companies themselves, see Jones on Telegraph & Telephone Companies, § 432; Wharton on Conflict of Laws, 3d ed., § 471*f*; Joyce on Electric Law, 2d ed., § 123; *Bushnell* v. *Chicago & N. W. R. R. Co.*, 69 Iowa, 620; *Cutts* v. *West. Un. Tel. Co.*, 71 Wisconsin, 46; *Telegraph Co.* v. *Beals*, 56 Nebraska, 415; *West. Un. Tel. Co.* v. *Lowrey*, 49 N. W. Rep. 707; *West. Un. Tel. Co.* v. *Cook*, 9 C. C. A. 680; *West. Un. Tel. Co.* v. *Reynolds*, 77 Virginia, 173; Thompson on the Law of Electricity, § 192.

The statute in question is not in conflict with the commerce clause of the Constitution. It does not interfere with or obstruct such commerce, nor regulate the manner in which it shall be conducted, nor fix the rates of service, nor levy any tax upon it, nor does it even impose a penalty. It merely recognizes that the common-law liability exists, and by implication, or in effect, prohibits its nullification by contract. It only declares the law of Michigan to be the same as the common law of the other States as laid down by their respective courts.

This case is for failure to deliver a telegram, not for a mistake in transmission, and there is a vital difference. *Thompson* v. *Telegraph Co.*, 107 N. C. 449; *U. S. Tel. Co.* v. *Wenger*, 55 Pa. St. 262.

A common carrier is liable for damages to goods hap-

pening on his own line no matter where that line may be. *Richmond* v. *Tobacco Co.*, 169 U. S. 311. The statute attaches before the subject of interstate commerce comes into existence. *Turner* v. *Maryland,* 107 U. S. 38.

The statute does not violate the clause of the Constitution prohibiting the States from passing any law impairing the obligation of contracts, nor is it in violation of the Fourteenth Amendment either as to due process, *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13; *McCulloch* v. *Maryland,* 4 Wheat. 316; or the equal protection of the laws, *Smith* v. *American Express Co.*, 108 Michigan, 572; *U. S. Tel. Co.* v. *Wenger,* 55 Pa. St. 262. See also on this subject: *W. U. Tel. Co.* v. *Blanchard,* 68 Georgia, 299; *W. U. Tel. Co.* v. *Chamblee,* 122 Alabama, 428; *W. U. Tel. Co.* v. *Short,* 53 Arkansas, 434; *W. U. Tel. Co.* v. *Meek,* 49 Indiana, 53; *Ayer* v. *W. U. Tel. Co.*, 79 Maine, 493; *Wertz* v. *W. U. Tel. Co.*, 7 Utah, 446; *Southern Express Co.* v. *Caldwell,* 21 Wall. 264; *Francis* v. *W. U. Tel. Co.*, 58 Minnesota, 252.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

Intercourse between the States by the telegraph is interstate commerce. *Telegraph Co.* v. *Texas,* 105 U. S. 460, 464; *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, 356. So considering, one division of the Supreme Court of Michigan was of the opinion that the statute of the State in regard to telegraph messages, if not limited to those which were delivered within the State, would be unconstitutional. In arriving at that conclusion it was considered whether the common law of the State prohibited the stipulation against liability for negligence, and it was asked, if it did not, "Can a statute of a State deny to one engaged in interstate commerce the right which he theretofore possessed of making a contract limiting his lia-

bility?" The first question was answered in the negative, on the authority of the *Western Union Telegraph Co.* v. *Carew,* 15 Michigan, 525, and subsequent cases. The second question was also answered in the negative, as we have seen. It was, in effect, said that if the first question could be answered in the affirmative the case would be determined by the local law, and there would be no power of revision in this court, citing *Delmas* v. *Ins. Co.,* 14 Wall. 661, and *Penn. R. R. Co.* v. *Hughes,* 191 U. S. 477. This presents the seeming paradox that a prohibition against a limitation of liability, if prescribed by the common law, would be valid, and that a like prohibition prescribed by a statute would not be. It is not clear whether it is meant to be said that in the first instance there would be, and in the second instance there would not be, a proper limitation of the liberty of contract and a valid interference with interstate commerce.

The other division of the court, on the other hand, expressed the view that "the legislature intended its action to be coextensive with its authority to act, and that the statute should be given the broadest possible application," and held to cover state and interstate messages and "to forbid a limitation of liability" for negligence and "to make void the stipulation contained in the contract." The power of the legislature to pass it was asserted, and that it did not burden interstate commerce. "The contract," it was said, "was made in the State, is single, involves in its performance service of defendant within and without this State for a single charge." The service was not performed, and for the breach of the common law and contract duty the milling company has brought suit, it was said, and that the telegraph company seeks to avoid liability by the stipulation on the back of the message. To this defense it was answered:

"By the law of the State, the stipulation is of no force or effect. The court so declared. It is contended here

·that in so doing the court was in error. It will be well to have in mind the effect of the statute as it was applied · by the trial court. Undoubtedly, it was the application of a local law to the contract. But the local law does not attempt to state, measure or ·define any duty of defendant, or to establish, define or fix the consequences of ·its miscarriage.· The liability ˏof .defendant is established without reference to the statute. It is when it asks to be discharged therefrom, by giving effect to the stipulation, that the local law becomes, if at all, effective. These considerations answer those objections which are based upon. the notion that the local law has been given extraterritorial effect, and they require, also, that this case and· *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, shall be distinguished."

*Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, leaves. nothing to be said upon the principles relating to interstate telegraphic ·messages· and the limitations upon the States of power to regulate them. A statute of Indiana was adjudged invalid which prescribed that dispatches should be transmitted in the order of their de-·livery, whether· intended for delivery within or without the State, "under penalty, in case of failure to transmit, or if postponed out of such order, of one hundred dollars, to be recovered by the person whose dispatch is· neglected or postponed." The statute was construed by the Supreme· Court of the State to apply to dispatches not delivered in the State, even against the practice of the companies authorized by the laws of another State. .The message was delivered to the telegraph company in Indiana, addressed to the care of a person in Ottumwa, Iowa, who lived over a mile from the telegraph station, and· not within the delivery district. These facts were set up in the answer and, that in accordance with the custom and usage of the office, and, in order to facilitate the delivery of the message, a copy of the telegram was ·

promptly placed in the post-office, properly addressed and
delivered the following morning. And it was averred
that this was in accordance with the laws of Iowa. A de-
murrer was sustained to the answer and judgment en-
tered for the plaintiff for the sum of $100. It was affirmed
by the Supreme Court; it was reversed by this court on
the ground that the statute was a regulation of interstate
commerce. Of the correctness of that conclusion there
cannot be any controversy, but there is a manifest dif-
ference between the statute of Indiana and the statute
of Michigan and of their purposes and effects. The
former imposed affirmative duties and regulated the per-
formance of the business of the telegraph company. It
besides ignored the requirements or regulations of an-
other State, made its laws paramount to the laws of
another State, gave an action for damages against the
permission of such laws for acts done within their juris-
diction. Such a statute was plainly a regulation of inter-
state commerce, and exhibited in a conspicuous degree the
evils of such interference by a State and the necessity of
one uniform plan of regulation. The statute of Michigan
has no such objectionable qualities. It imposes no addi-
tional duty. It gives sanction only to an inherent duty.
It declares that in the performance of a service, public in
its nature, that it is a policy of the State that there shall
be no contract against negligence. The prohibition of
the statute, therefore, entails no burden. It permits no
release from that duty in the public service which men
in their intercourse must observe, the duty of observing
the degree of care and vigilance which the circumstances
justly demand, to avoid injury to another.

We have seen that one division of the Supreme Court
of the State was of the view that if the prohibition rested
on the common law its validity could not be questioned.
We cannot concede such effect to the common law and
deny it to a statute. Both are rules of conduct proceed-

ing from the supreme power of the State. That one is unwritten and the other written can make no difference in their validity or effect. The common law did not become a part of the laws of the States of its own vigor. It has been adopted by constitutional provision, by statute or decision, and, we may say in passing, is not the same in all particulars in all the States. But however adopted, it expresses the policy of the State for the time being only and is subject to change by the power that adopted it. How then can it have an efficacy that the statute changing it does not possess?

It is to the laws, whether part of the common law or found in the statutes of the State, that we look for the validity and extent of a contract between persons. They constitute its obligation. How far this principle is limited by the commerce clause of the Constitution of the United States may be illustrated by several cases cognate to the one at bar.

In *Chicago &c. Railway* v. *Solan,* 169 U. S. 133, a statute was considered which prohibited any railroad company from limiting its liability as a common carrier. Solan sued the company to recover $10,000 damages received by him in Iowa from the derailing, by the company's negligence, of a car in which he was traveling under a written contract, by which the company agreed to carry him, with cattle, from Rock Valley to Chicago. It was stipulated in the contract that the company should, in no event, be liable to the owner or person in charge of such stock for any injury to his person in any amount exceeding $500. The company alleged that the stipulation was part of the consideration for the transportation, that it related exclusively to interstate commerce, that it was valid at common law, and that the statute of Iowa was void and unconstitutional, "as being an attempt to regulate and limit contracts relating to interstate commerce." The contentions were rejected. The court said (p. 137):

"Railroad corporations, like all other corporations and persons, doing business within the territorial jurisdiction of a State, are subject to its law. . . . The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the scope of local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits."

It was further said:

"The statute now in question, so far as it concerns liability for injuries happening within the State of Iowa—which is the only matter presented for decision in this case—clearly comes within the same principles. It is in no just sense a regulation of commerce. It does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares, or freight. Its whole object and effect are to make it more sure that railroad companies shall perform the duties resting upon them by virtue of their employment as common carriers, to use the utmost care and diligence in the transportation of passengers and goods."

*Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477, 491, may be cited as pertinent. It determined the validity of the common law of Pennsylvania, which prohibited the common carrier from limiting his liability for his own negligence, though the property was shipped from New York to a town in Pennsylvania under a bill of lading which contained a clause limiting the carrier's liability to a stip-

ulated value in consideration of the rate paid, the shipper having been offered a bill of lading without such limitation on payment of a higher rate. The court quoted at length from the *Solan case* and concluded as follows:

"We can see no difference in the application of the principle based upon the manner in which the State requires this degree of care and responsibility, whether enacted into statute or resulting from the rules of law enforced in the state courts. The State has a right to promote the welfare and safety of those within its jurisdiction by requiring common carriers to be responsible to the full measure of the loss resulting from their negligence, a contract to the contrary notwithstanding."

There is a difference between that case and this—indeed some contrast. In that case a contract was made in New York which limited the liability of the carrier, the limitation being in accordance with the laws of that State; it was disregarded in Pennsylvania, where the act of negligence occurred, and the law of the latter enforced. In this case the contract limiting liability was made in Michigan, the negligent act occurred in another State, and yet the limitation, it is insisted, is void. In other words, in that case the law of the State was disregarded, in this case it is sought to be enforced. These, however, are but incidental contrasts, in no way affecting the basic principle of the cases, which was that the laws passed upon were exercises of the police power of the States in aid of interstate commerce, and although incidentally affecting it did not burden it.

*Western Union Tel. Co.* v. *James,* 162 U. S. 650, is a strong example of the same distinctions. A statute of Georgia which required telegraph companies having wires wholly or partly within the State to receive dispatches, transmit and deliver them with due diligence under the penalty of $100, was sustained as a valid exercise of the power of the State in relation to messages by telegraph

from points outside of and directed to some point within the State. It will be observed that this case in some particulars exhibits a contrast to *W. U. Tel. Co.* v. *Pendleton, supra,* and yet they are entirely reconcilable, having a common principle. In the latter case the law passed on clearly transcended the power of the State, because it directly regulated interstate commerce, as we have already shown. In the *James case* the power of the State was exercised in aid of commerce. In the latter case prior cases were reviewed and the principle determining the validity of the respective statutes was declared to be whether they could be "fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States." It was said that a statute of that kind as it would not "unfavorably affect or embarrass" the telegraph company, in the course of its employment should be held valid "until Congress speaks upon the subject." And it was observed that "it is a duty of a telegraph company which receives a message for transmission, directed to an individual at one of its stations, to deliver that message to whom it is addressed with reasonable diligence and in good faith. That is a part of its contract, implied by taking the message and receiving payment therefor." And there can be liability to the sender of the message as well as to him who is to receive it. The telegraph company in the case at bar surely owed the obligation to the milling company to not only transmit the message, but to deliver it. For the failure of the latter it sought to limit its responsibility, to make the measure of its default not the full and natural consequence of the breach of its obligation, but the mere price of the service, relieving itself, to some extent, even from the performance of its duty, a duty, we may say, if performed or omitted, may have consequence beyond the damage in the particular instance. This the statute of the State, expressing the policy of the State,

declares shall not be.  For the reasons stated we think that this may be done, and that it is not an illegal interference with interstate commerce.

Another contention is made.  It is urged that the statute as construed violates the Fourteenth Amendment of the Constitution of the United States, in that it abridges the privileges and immunities between citizens of the United States and deprives the telegraph company and the persons with whom it does business of their liberty and property without due process of law.  The basis of this contention is the liberty of the telegraph company to make contracts.  It is rather late in the day to make that contention.  The regulation of public service corporations is too well established, both as to power and the extent of the power, to call for any discussion.  It is true such power is not unlimited, nor is the police power of the State, but the cases we have cited demonstrate that the statute of Michigan is not in excess of such powers.

Lastly, it is said that the statute deprives the telegraph company and the persons with whom it does business of the equal protection of the laws.  This is sought to be sustained on the ground that express companies and other common carriers may by contract limit their liability.  The argument to sustain the contention is in effect that which we have considered.  If an unjust discrimination is intended to be asserted, *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, is an answer.

*Judgment affirmed.*


MR. JUSTICE HOLMES dissents.