Johnson, J.
The statute in question provides for the creation of a State Liability Board of Awards, which shall establish a state insurance fund, from premiums paid by employers and employes in the manner provided in the act. It provides a plan of compensation for injuries, not wilfully self inflicted, resulting from accidents to employes of employers, both of whom have voluntarily contributed to the fund in the proportion of 10 and 90 per cent, respectively. It applies only where the employer has five or more operatives regularly in the same business or in or about the same establishment. An employer who complies with the act is relieved from liability to respond in damages at common law, or by statute, for injury or death of an employe who has complied with its provisions, except when the injury arises from the wilful act of himself or officer or agent, or from failure to comply with any law or ordinance providing for protection of life and safety of employes, in which event the employe or his representatives have their election between a suit for damages and a claim under the act. Employers of five or more who do not pay premiums into the fund are deprived in actions against them of the common law defenses of the fellow servant rule, the assumption of risk and of contributory negligence. Where the parties are operating under the act, the injured employe and his dependents in case of death, are compelled to accept compensation from the insurance fund in the manner provided, except in the cases above set forth.
*387 The objections to the validity of the act are stated by different counsel at the bar, and in their briefs, under various heads.
All of them are substantially comprised in the following: First. That it is an unwarranted exercise of the police power and directs the state to use public funds for private purposes. Second. That Sections 20-1 and 21-1 take private property without due process of law in contravention of Sections 5, 16 and 19, Art. 1, of the Constitution of Ohio, and the Fourteenth Amendment to the Constitution of United States, in that it deprives employers of the defense of assumption of risk, and deprives the employe, of part of his wages to be paid to the state insurance fund, of the right to sue for injuries sustained, of recourse to the courts, and of a trial by jury. Third. That it deprives parties of the freedom of contract and impairs the obligations of contracts. Fourth. That it makes an unjust and arbitrary classification and does not affect all who are within its reason.
Sections 20-1 and 21-1 are as follows, viz.:
“Sec. 20-1. Any employer who employs five or more workmen or operatives regularly in the same business or in or about the same establishment who shall pay into the state insurance fund the premiums provided by this act, shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injuries or death of any such employe, wherever occurring, during the period covered by such premiums, provided the injured employe has remained in his service with notice that his employer has paid *388 into the state insurance fund the premiums provided by this act; the continuation in the service of such employer with such notice, shall be deemed a waiver by the employe of his right of action as aforesaid.
“Each employer paying the premiums provided by this act into the state insurance fund shall post in conspicuous places about his place or places of business typewritten or printed notices stating the fact that he has made such payment; and the same, when so posted, shall constitute sufficient notice to his employes of the fact that he has made such payment; and of any subsequent payments he may make after such notices have been posted.
“Sec. 21-1. All employers who employ five or more workmen or operatives regularly in the same business, or in or about the same establishment who shall not pay into the state insurance fund the premiums provided by this act, shall be liable to their employes for damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer, or any of the employer’s' officers, agents or employes, and also to the personal representatives of such employes where death results from such injuries and in such action the defendant shall not avail himself or itself of the following common-law defenses:
“The defense of the fellow-servant rule, the defense of the assumption of risk, or the defense of contributory negligence.”
The law was passed after a report referred to in the briefs, of a commission appointed by the governor, in obedience to a statute passed for that *389 purpose. The report was prepared after an exhaustive research into industrial conditions in many countries, and an examination of laws, which have been passed in the effort to improve such conditions. Substantially its conclusions are, that the system which has been followed in this country, of dealing with accidents in industrial pursuits, is wholly unsound, that there is an intelligent and widespread public sentiment which calls for its modification and improvement, and that the general welfare requires it. That there has been enormous waste under the present system, and that the action for personal injuries by employe against employer no longer furnishes a real and practical remedy, annoys and harasses both, and does not meet the economic and social problem which has resulted from modem industrialism. Conceding the desirability of improvement, of legislative and governmental action, and the good results in other countries which have no written constitution to limit the legislative power, we in this country have the problem of devising a plan which shall not infringe the fundamental law.
It is apparent, from a contemplation of the whole enactment and its scope and purpose, as well as of the participation of the state in its administration, that it must find its validity, if at all, in the police power of the state.
There is now (it can be fairly said) general concurrence in the meaning of the term “police power” and as to its extent.
Professor Freund in his work says at Section 2:
“The term 'police power’ has never been circumscribed. It means at the same time a power and *390 function of government, a system of rules and an administrative organization and force.”
And in Section 3, after discussing its nature and aims, he says:
“It will reveal the police power not as a fixed quantity, but as the expression of social, economic and political conditions. As long as these conditions vary, the police power must continue to be elastic, i. e., capable of development.”
In State, ex rel. Monnett, v. Pipe Line Company, 61 Ohio St., 520, as to the constitutionality of the Ohio anti-trust law, it is said: “The definite proposition of counsel upon this point is that although the act is the exercise of legislative power, it transcends the provisions of the state and federal constitutions, which render inviolable the rights of liberty and property, which include the right to make contracts. It would be difficult to place too high an estimate upon these guaranties, and they include the right to make contracts. But it is settled that these guaranties are themselves limited by the public welfare or the exercise of the police power.”
In Phillips v. State, 77 Ohio St., 216, it is said: “It is almost an axiom that anything which is reasonable and necessary to secure the peace, safety, morals and best interests of the commonwealth may be done under the police power; and this implies that private rights exist subject to the public welfare. These principles are plainly recognized in Article XIV, Section 1, of the Constitution of the United States, and Article I, Section 19, of the Constitution of Ohio.”
*391 The cases of Noble State Bank v. Haskell, 219 U. S., 104, and Assaria State Bank v. Dolley, 219 U. S., 121, involved the constitutionality of laws enacted by Oklahoma and Kansas, in the exercise of the police power to establish bank depositors guaranty funds created by levy on each of the banks. Objection was made that the tax was an appropriation of the property of one bank to pay debts of another without due process of law.
Mr. Justice Holmes said: “The substance of the plaintiff’s argument is that the assessment takes private property for private use without compensation. * * * Nevertheless, notwithstanding the logical form of the objection, there are more powerful considerations on the other side. In the first place, it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. * * *
“It may be said in a general way that the police power extends to all the great public needs. (Camfield v. United States, 167 U. S., 518.) It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.”
We think it clear that the objects and purposes as above set. forth, which the legislature contemplated in the passage of the law in question, are sufficient to sustain the. exercise of the police power, and the participation of the state in the manner provided. Whether the plan adopted is *392 the most appropriate or best calculated to accomplish those objects are matters with which the court is not concerned and the law should not be held to be invalid unless clearly in violation of some provision of the constitution.
It is urgently insisted that while the law is apparently permissive and leaves its operation to the election of emplojrers and employes, it is really coercive and upon this premise much persuasive argument against the validity of the law is based. This is an important question in the case.
An examination of the sections touching the questions made is here necessary.
After providing in Section 20-1 that an employer who elects to comply with the act shall be relieved from liability to the employe at common law, or by statute, (except as provided in Section 21-2) it is then enacted in Section 21-1: “All employers who shall not pay into the insurance fund, * * * shall be liable to their employes for damages, * * * caused by the wrongful act, neglect or default of the empkryer, his agents,” etc., and in such cases the defenses of assumption of risk, fellow-servant and contributory negligence are not available. So that, an employer who elects not to come into the plan of insurance may still escape liability if he is not guilty of wrongful act, neglect, or default. His liability is not absolute as in the case of the New York statute hereinafter referred to. And it cannot be said that the withdrawal of the defenses of assumption of risk, fellow-servant and contributory negligence as against an employer who does not go into the plan, is coercive, for such withdrawal is in harmony *393 with the legislative policy of the state for a number of years past. The law known as the Norris law passed in 1910 withdrew these defenses in the particulars covered by the law.
As to the employe, if the parties do not elect to operate under the act, he has his remedy for the neglect, wrongful act or default of his employer and agents as before the law was passed, and is not subject to the defenses named.
If the parties are operating under the act the employe contributes to an insurance fund for the benefit of himself .or his heirs, and in case he is injured or killed, he or they will receive the benefit even though his injury or death was caused by his own negligent or wrongful act, not wilful. And that is not all. Under Section 21-2 if the parties are operating under the act and the employe is injured or killed, and the injury arose from the wilful act of his employer, his officer or agent, or from failure of the employer or agent to comply with legal requirements, as to safety of employes, then the injured employe or his legal representative has his option to claim under the act or sue in court for damages.
Therefore the only right of action which this statute removes from the employe is the right to sue for mere negligence (which is not wilful or statutory) of his employer, and it is within common knowledge that this has become in actual practice a most unsubstantial thing. It is conceded by counsel that the particulars named .in Section 21-2 are such, as form the basis for a large portion of claims for personal injuries.
*394 Many employers may elect to remain outside its “■provisions, it would not be strange if many do so. . On the other hand, some workmen may feel disposed to do likewise in spite of what would seem to be to their manifest advantage in securing the benefits of the insurance. However, if there should be such general acceptance of and compliance with the statute as its framers hope for, so as to bring a large part of the labor employed in the industrial enterprises of the state within its influence and operation, that would not demonstrate its coercive character, on the contrary it would justify the enactment. Naturally time and experience will disclose imperfections and inefficiencies in the plan, but if it should prove to be feasible, and appropriate in a general way, these imperfections can be corrected by -the legislature. On account of the common law and statutory rights still preserved to the parties by this statute (as we have pointed out) in cases where the election is made to come under its provisions as well as not to do so taken in connection with the advantage to each which the plan contemplates, we cannot say that the statute is coercive. As was said in the Wisconsin case: “Laws cannot be set aside upon mere conjecture or speculation. The court must be able to say with certainty that an unlawful result will follow/’’ We do not see how any such thing can be said here. Every consideration of prudence and self interest (things not easily associated with compulsion and coercion) would seem to lead an employe to voluntarily make the contribution and waiver contemplated. Second. Does this statute take private property without *395 due process of law and deny the guaranties of the constitution'as claimed?
Perhaps no exact definition of “Due process of law” has been agreed on. Judge Story defines it in his work on the constitution, Section 1935: “The right to be protected in life, and liberty and in the acquisition of property under equal and impartial laws, which govern the whole community. This puts the state upon its true foundation, for the establishment and administration of general justice, justice of law, equal and fixed, recognizing individual rights and not impairing them.” In Cooley on Const. Limit., Sec. 356, it is said: “Due process of law in each particular case, means such an exercise of the government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the classes of cases to which the one in question belongs.”
The case of Ives v. South Buffalo Ry. Co., 201 N. Y., 276, (relied on by some of counsel) involved a statute different in many essentials from the Ohio law. Its controlling feature was that every employer engaged in any of the classified industries should be liable to a workman for injury arising in the course of the work by a necessary risk inherent in the business whether the employer was at fault or not and whether the employe was at fault or not, except when his fault was wilful.
The court held the law invalid, as imposing the ordinary risks of a business (which under the *396 common law the employe was held to assume) on the employer. The court states one of the premises on which it proceeds as follows: “When our constitutions were adopted, it was the law of the land that no man who was without fault or negligence could be held liable in damages for injuries sustained' by another.”
But that rule was not of universal application. At common law one may sustain such relation to the inception of an undertaking that he will be held liable for negligence in the progress of the enterprise, even though he have no part or connection with the negligent act itself which caused the injury. Such for instance, as where the owner of property contracts with an independent contractor to do work which though entirely lawful, yet has inherent probabilities of harm if negligently performed. The position in the line of causation which employers sustain in modern industrial pursuits is of course the basic fact on which employers' liability laws rest.
As to the right to abolish the defense of assumption of risk, it is enough to say here that the great weight of authority is against the New York position and the position of such of the counsel in this case as insist on that rule. Some of counsel appearing against the validity of this law, concede the right to abolish the defenses referred to. The supreme courts of Massachusetts, Wisconsin and Washington have recently held in cases sustaining the validity of statutes similar to the one here attacked, that it is within the legislative power to abolish the defense referred to. In re Opinion of Justices, 209 Mass., 607, 96 N. E. Rep., 308; Borg *397 nis v. Falk Co., 147 Wis., 327, 133 N. W. Rep., 209; State, ex rel., v. Clausen, 65 Wash., 156, 117 Pac., 1101.
Since the argument of this case the Supreme Court of the United States has decided the case of Mondou v. N. Y., N. H. & H. Rd. Co., 223 U. S., 1, and has sustained the constitutionality of the employers’ liability law passed by Congress. The abolition of these rules was urged as an objection to the law. The court say:
“Of the objection to these changes it is enough to observe:
“First. A. person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. Munn v. Illinois, 94 U. S., 113, 134; Martin v. Pittsburg & Lake Erie R. R. Co., 203 U. S., 284, 294; The Lottawanna, 21 Wall, 558, 577; Western Union Telegraph Co. v. Commercial Milling Co., 218 U. S., 406, 417.”
The recent case of State v. Boone, 84 Ohio St., 346, is cited as indicating limitations of the police power which apply here. The act involved in that case required the physician in attendance on a case of confinement to investigate and certify with *398 out compensation to certain facts which would not naturally come within the knowledge of the attending physician, and as to matters wholly outside the scope of his professional duty. The court held the statute unconstitutional as to physician and midwife because of an unreasonable and arbitrary exercise of the police power. That was the proposition of law decided in that case and no other proposition was decided. The court was careful to point out in the opinion and also on motion for rehearing that the state might require the physician to report to proper authority, facts which would come naturally under his observation in the line of his duty without compensation. Other matters referred to in the opinion were hot included in the syllabus which stated the law decided by the court.
The court remarks that the police power inheres in the sovereignty. Its foundation “is the right and duty to provide for the common welfare of the governed.” Manifestly the reasoning which led to the conclusion in that case that the statute had been passed by an unreasonable exercise of the police power can have no application here.
State, ex rel., v. Hubbard, 22 C. C., 253, affirmed without opinion, 65 Ohio St., 574, and State, ex rel., v. Guilbert, 56 Ohio St., 575, involving the validity of statutes creating a teachers’ pension fund and the Torren’s law to establish an insurance fund for the protection of land titles, concerned laws which were wholly compulsory with no element of choice and were not claimed to have been passed under the police power to cure undesirable public conditions, but for mere private *399 benefit. These cases can therefore have no relation to a plan adopted to promote the general welfare, the contributions to which, are made after an election by the parties to participate in the undertaking.
It is urged by counsel opposing this law that the case of Byers v. Meridian Printing Co., 84 Ohio St., 408, is of conclusive weight condemnatory of the legislation we are examining.
In that case it is ruled that an amendment to Section 5094, Revised Statutes, (changing the presumption of malice and burden of proof in actions for libel where retraction is made on demand, in the manner stated) is unconstitutional.
The decision was put on the ground that plaintiff was guaranteed his remedy by due course of law for an injury done in his land, goods, person or reputation, under Art. I, Section 16, Constitution of Ohio. When the injury was done to the reputation of plaintiff by the libel, he was entitled to his constitutional remedy at law, but at the same time he was entitled to demand of the publisher a retraction of the libel. Therefore the legislature had no right to put him on his election as to two courses both of which he was entitled to follow.
The court is careful to declare that it is not disposed to question that a citizen may waive a constitutional right. But being compelled to elect between two rights, both of which a person is entitled to, has no resemblance to waiver. And under the law under investigation here as already shown, the right of action (for injury by wilful act of the employer and for his failure to comply *400 with requirements as to the safety of employes) is still reserved to the employes. So that the only thing withdrawn by this law, and to which withdrawal he consents by his voluntary election to operate under the law, is his right of action for mere negligence, and in place of it he receives the substantial protections and privileges under the state insurance fund.
It is stated in Butt v. Green, 29 Ohio St., 670, that persons may expressly or impliedly waive either constitutional or statutory provisions intended for their benefit and as above shown the court in the Byers case state it is not disposed to question that one may Avaive a constitutional right.
We think that in a case such as is presented here, in which the state itself has undertaken a great enterprise in the interest of the general good, and in the exercise of its police power, and presents to its citizens the option to join in the undertaking and receive its protection and benefit, on a right of action being withdrawn by the legislature, which experience has shown to be difficult of practical enforcement, while preserving the. valuable and substantial kindred rights of action, it cannot be said that in such withdrawal there is a violation of the constitution in the respects claimed. But it is insisted that the act delegates judicial power to the Board of Awards, and denies recourse to the courts and trial by jury.
Of course if the board is a court there is an end of the whole matter. The statute would be unconstitutional. For if the board is a court it *401 has not been created in accordance with the manner provided by the constitution. We do not consider the Board of Awards ab court, or invested with judicial power within the meaning of the constitution. I
It is created by the act purely as an tive agency to bring into being and administer the insurance fund, and the fact that it is empowered to classify persons who come under the law and| to ascertain facts as to the application of the fund,! does not vest it with judicial power within the? constitutional sense.
Under our system the executive department of the government has many boards to assist in the administration of its affairs.
In State, ex rel., v. Hawkins, 44 Ohio St., 98, it is said: “What is judicial power cannot be brought within the ring-fence of a definition. It is undoubtedly power to hear and determine, but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power.” The court then shows that many boards hear and determine questions affecting private as well as public rights, and quotes with approval from State, ex rel., v. Harmon, 31 Ohio St., 250: “The authority to ascertain facts and apply the law to the facts when ascertained pertains as well to other departments of government as to the judiciary.”
These principles were applied in France v. State, 57 Ohio St., 1, in which case the court remark that the case of State, ex rel., v. Guilbert, 56 Ohio St., 576, forms no exception, for the powers of the *402 recorder under the statute there in question were essentially those which properly belong to a court. Does the law deny recourse to the courts and trial by jury?
How does it affect an injured employe where the parties are operating under the act? In B. & O. Rd. Co. v. Stankard, 56 Ohio St., 232, which was a suit by the beneficiaries of a member of the relief department of the railroad, the company answered setting up a rule which provided that the decision of the relief department should be final. The court say: “The right to appeal to the courts for redress of wrongs is one of those rights which in its nature under our constitution is inalienable and cannot be thrown off or bargained away.”
But the court shows that parties may contract to submit the fixing of facts to some non-judicial tribunal and say: “In insurance and other like cases where the ultimate question is the payment of a certain sum of money, certain facts may be fixed by a person selected for that purpose in the contract, but the ultimate question as to whether the money shall be paid or not may be litigated in the courts and a stipulation to the contrary is void.”
So that under that rule the parties may conclusively bind themselves in advance to submit questions of amount, etc., to some tribunal other than a court, but the ultimate question of actual liability cánnot be removed from the courts.
Now, in this statute, Section 36 is as follows:
“Sec. 36. The board shall have full power and authority to hear and determine all questions within *403 its jurisdiction, and its decision thereon shall be final.
“Provided, however, in case the final action of such board denies the right of the claimant to participate at all in such fund * * * upon any * * * ground going to the basis of the claimant’s right, then the claimant Avithin thirty (30) days after the notice of the final action of such board may, by filing his appeal in the common pleas court of the county wherein the injury was inflicted, be entitled to a trial in the ordinary way, and be entitled to a jury if he demands it. In such a proceeding, the prosecuting attorney of the county, without additional compensation, shall represent the state liability board of awards, and he shall be notified by the clerk forthwith of the filing of such appeal.
“Within thirty days after filing his appeal, the appellant shall file a petition in the ordinary form against such board as defendant.”
Therefore, if the board denies the claimant’s right to participate in the fund on any ground going to the basis of his claim, he may by filing an appeal and petition in the ordinary form be entitled to trial by jury, the case proceeding as any other suit.
It is not an appeal in the sense of appealing from one court to another, but is really the beginning of an original suit.
As to this it must.be remembered that the whole proceeding is with and. against the Board of Awards. His claim is not-against the employer,There is no dispute between them. His claim is for the benefits- of the' insurance fund. The Board *404 of Awards inquires into the matters pointed out in the statute, and in case of dispute as to whether there is any ultimate right to “participate at all in such fund” he has his recourse to the courts.
But he is not confined to that method of proceeding. If he claims that the injury was caused by the wilful act of the employer or officer or agent or from failure to comply with legal requirements as to safety of employes, etc., he may waive his claim under the act and sue in court for his damages. But in his petition in such case he could not claim damages for mere negligence, he having elected to waive that cause of action, having elected, as it were, to assume the risk of his employer’s mere neglect in return for the benefits and protection to himself and his heirs afforded by the terms of the act.
Another objection that is urged against this statute is, that it makes an unjust and arbitrary classification and does not affect all who are within its reason as required by Section 26, Art. II, of Constitution of Ohio. Under the law only employers of five or more are affected by it.
Spear, J., in Cincinnati v. Steinkamp, 54 Ohio St., 295, remarked: “In order to be general and uniform in operation, it is not necessary that the law should operate upon every person in the state, nor in every locality; it is sufficient, the authorities concede in holding, if it operates upon every person brought within the relation and circumstances provided for, and in every locality where the condition exists.”
*405 To same effect are Platt v. Craig et al., 66 Ohio St., 75; Gentsch v. State, ex rel., 71 Ohio St., 151; Ry. Co. v. Horstman, 72 Ohio St., 107.
We think the classification is reasonable and proper. In the nature of the case the risks of any regular employment are less and the opportunity for avoiding them better where an employe is one of four than when the number is larger. As was said by Winslow, C. J., in Borgnis v. Falk, supra, “The difference in the situation is not merely fanciful — it is real.”
St. Louis Cons. Coal Co. v. Illinois, 185 U. S., 203, is a case in which a classification was made under somewhat similar manner, and was upheld.
Nor do we think it an objection that the law applies only to workmen and operatives and not to all others. This classification brings within the law all employes within its reason.
As to the suggestion that this statute impairs the obligations of contracts it is sufficient to say that it can of course not affect contracts in existence and unexpired at the time it is put into operation by the employer.
It is suggested that this legislation marks a radical step in our governmental policy not contemplated by the constitution, and which it is the duty of the court to condemn. But it creates no new right, or new remedy for wrong done.
It is an effort to in some degree answer the requirements of conditions which have come in an age of invention and momentous change.
The courts of the country, while firmly resisting encroachment on the constitutions in the past, have *406 yet found in their ample limits, sufficient to enable us to meet the emergencies and needs of our development, and we do not find that this statute goes beyond the bounds put upon the legislative will.
The demurrer to the petition will be overruled and the writ of mandamus awarded.

Demurrer overruled.

Spear, Price and Donahue, JJ., concur.