Johnson, J.
The contention of the plaintiff in error is that Section 27 of the act referred to infringes Section 5 of Article I of the Bill of Rights, which provides that right of trial by jury shall be inviolate; that it is obnoxious to Section 16 of the same Article, which provides that all courts shall be open and every person shall have remedy by due course of law; that it is the taking of property without due process of law; that it confers judicial power upon a nonjudicial tribunal; that it is an infringement of Section 35 of Article II of the Ohio Constitution; and that it is a denial of the equal protection of the law as guaranteed by the Federal Constitution.
Section 35 of Article II of the‘Ohio Constitution was adopted in September, 1912, and provides: “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, administered by the state determining the terms and conditions upon which payment shall be made therefrom, and taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree *236 of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto.”
The act referred to was passed pursuant to the grant of power contained in the above provision of the constitution. The act was, in effect, an amendment of the act of May 31, 1911, which provided for the creation of a state liability board of awards, which should establish a state insurance fund from premiums paid by employers and employes in the manner prescribed in the act.
This court, in upholding the constitutionality of the earlier statute, pointed out that it was not compulsory or coercive, and the general scheme of the law, with the provisions for the collection, control and disbursement by the state of the insurance fund provided for by its terms, was sustained as a valid exercise of the police power by the legislature. After the decision just referred to, Section 35, Article II,'was adopted by the people as an amendment to the constitution.
It is manifest that the paramount purpose of the amendment was to leave no doubt as to the power of the legislature to pass a compulsory act for the establishment of a state insurance fund to be administered by the state, to which fund employers should be compelled to contribute. It empowered the general assembly to take away any or all rights of action or defenses from employes or employers, subject to certain conditions named.
The sentiment which brought about these consecutive advance steps was of slow but sure growth. It *237 came to be believed that employes should receive compensation for injuries received in the course of their employment, without reference to questions of negligence, unless the injury was caused by their own wilful act; that as a matter of justice, based upon scientific considerations, injuries to workmen in the course of their employment, which were not caused by their own wilful act, should be regarded as a charge upon the business in which they were engaged. This principle and the position in the line of causation which employers sustain in industrial pursuits, are the foundations upon which rest the enactments to compel employers to contribute to state compensation funds. The obligation which arises from that basic relation has been sanctioned by the judgment of society as necessary to the public welfare.
The pertinent part of Section 27, which is attacked, is as follows: “Any employe whose employer has failed to comply with the provisions of section twenty-two hereof, who has been injured in the course of his employment, wheresoever such injury has occurred, and which was not purposely self-inflicted, or his dependents in case death has ensued, may, in lieu of proceeding against his employer by civil action in the courts, as provided in the last preceding section, file his application with the state liability board of awards for compensation in accordance with the terms of this act, and the board shall hear and determine such application for compensation in like manner as in other claims before the board; and the amount of compensation which said board may ascertain and determine to *238 be due to such injured employe, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the board; and in the event of the failure, neglect or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the board, which with an added penalty of fifty percentum, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same. And any employe whose employer has elected to pay compensation to his injured, or to the dependents of his killed employes in accordance with the provisions of section twenty-two hereof, may, in the event of the failure of his employer to so pay such compensation or furnish such medical, surgical, nursing and hospital services and attention or funeral expenses, file his application with the state liability board of awards for the purpose of having the amount of such compensation and such medical, surgical, nursing and hospital services and attention or funeral expenses determined; and thereupon like proceedings shall be had before the board and withlike effect as hereinbefore provided.”
The sections preceding Section 27 deal with three classes of employers:
First: Employers who comply with the provisions of the statute and pay premiums into the state insurance fund under Section 22.
*239 Second: Employers who are authorized under that section by the industrial commission to directly compensate their injured employes instead of paying premiums to the state insurance fund.
Third: Employers who do not comply with the law.
As to employes of employers who do not comply with the law, Section 26 provides that such employers shall be liable to their employes for damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer, or his agents or employes, and in such case the defendant shall not avail himself of the defense of the fellow-servant rule, of the assumption of risk or of contributory negligence; and Section 27 then enacts that any employe, whose employer has failed to comply with the provisions of the law, who has been injured in the course of employment, etc., may, in lieu of proceeding against his employer by civil action in the courts, file his application with the commission for compensation in accordance with the terms of the act.
It will be observed that the employe of such an employer has two remedies, and he must elect which one he will pursue. He cannot have both. He may sue his employer, as at common law, and, in that suit he is permitted to recover whatever damages he is able to show he has sustained; or, he may, in lieu of such suit, apply to the commission for. compensation under the act. In the latter event, the board is required to proceed in like manner as in other claims. They must find whether the em *240 ployer is one within the terms of the act, that is, whether he had five or more employes regularly engaged, etc., whether he had paid premiums to the state insurance fund, whether the claimant has suffered an injury which he received in the course of his employment, and if so, its nature and extent, and whether it was self-inflicted. If the claimant is one who is shown to be entitled to compensation, the amount is fixed in accordance with the provisions of the statute. In other words, the proceeding where the employe asks for compensation is up to this point precisely as if the employer had complied with the law. It is then the duty of the commission to order the employer to pay the amount of the award to the employe, “and in the event of the failure, neglect or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the board, which with an added penalty of fifty percentum, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same.”
The grant of power to the general assembly to pass a compulsory law carries with it, as incident thereto, the power to include all such reasonable provisions as are necessary to make the law effective. The proceeding laid down is in full keeping with the provisions of Section 35 of Article II of the Constitution, and is one to compel the employer to perform his part in the general scheme of industrial protection.
*241 The plaintiff in error contends that his constitutional rights have been infringed in the respects above set forth. While it cannot be said that one who comes into court, confessing that he has failed to comply with the express provisions of a statute, is to be denied the privilege of asserting the invalidity of the statute as the reason for his noncompliance with it, still he must realize that any penalties that are visited upon him for such noncompliance with the terms of the statute are not to be complained of in the event of its being finally upheld. While different provisions of the constitution are referred to as being violated, the contention as to all rests upon substantially the same grounds.
It is claimed first that the right of trial by jury is violated. As to this, it must be noted that upon failure of the employer to comply with the statute, and upon his failure to comply with the order of the commission to pay the compensation fixed to the person entitled to it, the same shall constitute a liquidated claim for damages against such employer in the amount fixed, which with an added penalty of fifty per cent, may be recovered in an action in the name of the state for the benefit of the employe.
This is a necessary proceeding to compel the employer to do the thing which the general assembly was authorized to require by the constitutional amendment. It is at once manifest that the provisions of the section whose validity is attacked are important and essential steps in the administration of the law itself and are vital to the accomplish *242 ment of its beneficent purpose. The suit for the liquidated or stipulated amount is not a suit as at common law by the employe for damages sustained. The employe has waived the right to bring such a suit by claiming compensation. A suit for damages is one for the recovery of an unliquidated sum in an action at law. The suit by the state for the amount of the compensation under Section 27 is not one for negligence of any kind. It has no regard for such a thing. It is simply based on the fact of injury in the course of employment. The recovery in the damage suit is presumed to wholly compensate the injured person, but when he elects to accept compensation it is fixed in accordance with the schedule. The action to recover it is a statutory action, and under the amendment the statute properly fixes the measure of recovery. The action against the employer to recover the amount so ascertained and fixed must be brought in a court of general jurisdiction, and the defendant employer is entitled to a trial by jury. He is entitled to make the defense that he is not an employer of five or more employes, etc.; that the injury to the beneficiary was not received in the course of .employment, or that it was wilfully self-inflicted; or he might show that he had paid his premium into the insurance fund. The defense that he would not be entitled to make in the case simply goes to the amount of compensation, for that is fixed pursuant to the statute.- If the issues stated are found against him, and he pays the amount fixed by the board, he has only paid what other employers pay W'ho comply with the provisions of the law, together *243 with the penalty which the law imposes on him for not obeying it. Inasmuch as the amount recovered is not determined by proof of the actual damages sustained, but is such an amount as is fixed by the statute when the administrative board has ascertained the facts to which the statute would apply, there is nothing for the jury to pass upon on that question. It is a sum that is liquidated or stipulated by the statute. As was said by Judge Mcllvaine in C., S. & C. Rd. Co. v. Cook, 37 Ohio St., 265, 273, in which the validity of a statute giving a fixed penalty against a railroad company for overcharging was involved: “If an issue had been joined, for the trial of which either party might, of right, have demanded a jury, upon the finding of the jury upon the issue for the plaintiff below, the amount of their verdict would have been controlled by the statute.” These views are also sustained in Commissioners v. Church, Admr., 62 Ohio St., 318, 345, and Reckner v. Warner, 22 Ohio St., 275.
There is no denial of trial by jury as to any issue which the employer is entitled to raise.
It is also claimed that the section under examina- i tion infringes on the judicial power of the state in; that it confers upon an administrative board judicial ; functions. The judicial power of the state is vested by Section 1 of Article IV of the Constitution in the courts named in that section, and it is contended that the duties.laid upon the industrial commission are judicial in character and call for the exercise of judicial power.
From what has been already shown it will be seen that the proceedings before the commission, and its *244 order, are merely administrative, and simply lay the foundation for a suit in a court of competent jurisdiction in which the employer has due process and all rights preserved. .
In State, ex rel. Yaple, v. Creamer, Treas., 85 Ohio St., 349, at page 400, the following was said as to the same contention:
“Of course if the board is a court there is an end of the whole matter. The statute would be unconstitutional. For if the board is a court it has not been created in accordance with the manner provided by the constitution.
“We do not consider the board of awards a court, or invested with judicial power within the meaning of the constitution.
“It is created by the act purely as an administrative agency to bring into being and administer the Insurance fund, and the fact that it is empowered fo classify persons who come under the law and to ascertain facts as to the application of the fund, does not vest it with judicial power within the constitutional sense.
“Under our system the executive department of the government has many boards to assist in the administration of its affairs.
“In State, ex rel., v. Hawkins, 44 Ohio St., 98, it is said: ‘What is judicial power cannot be brought within the ring-fence of a definition. It is undoubtedly power to hear and determine, but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power.’ The court then shows that many boards hear and determine questions af *245 fecting private as well as public rights, and quotes with approval from State, ex rel., v. Harmon, 31 Ohio St., 250: The authority to ascertain facts and apply the law to the facts-when ascertained pertains as well to other departments of government as to the judiciary.’ ”
In Hunter v. Colfax Consol. Coal Co., 154 N. W. Rep. (Iowa), 1037, it is said, at page 1060, concerning a similar claim: “According to Sabre’s Case, 86 Vt. 347, 85 Atl. 694, Ann. Cas. 1915C, 1269, such acts confer the power upon investigation to apply the general provisions of law to particular circumstances and situations, and may validly leave much of detail to the discretion of a commission; that though they, may, in a sense, clothe an administrative body with quasi judicial functions in some respects, this is authorized by the police power, and confers power merely to determine facts upon which existing law shall operate, which is a conferring of auxiliary or subordinate legislative powers. The act takes away the cause of action on the one hand, and the ground of defense on the other, and'merges both in a statutory indemnity, fixed and certain.”
In 6 Ruling Case Law, Section 175, page 175, it is said: “In accordance with the power of the legislature to enact laws the effect and operation of which is made dependent on the happening of certain contingencies, the condition selected may be the ascertainment of particular facts by executive or other officers. This has given rise to the well established distinction that although the legislature cannot delegate its powers to make a law yet it can *246 delegate a power to determine some facts or state of things on which the law may depend. The mere fact that an officer is required by law to inquire into the existence of certain facts and apply the law thereto to determine what his official conduct shall be, and that these acts may affect private rights, does not constitute an exercise of judicial power. Accordingly a statute may leave to nonjudicial officers the power to declare the existence of facts which call into operation its provisions, and similarly may grant to commissioners and other subordinate officers power to ascertain and determine appropriate facts as a basis for procedure in the enforcement of particular laws.”
In Field v. Clark, 143 U. S., 649, at page 694, the court quote with approval from Locke’s Appeal, 72 Pa. St., 491, 498: “The legislature cannot delegate its power to make, a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government.” And in Reetz v. Michigan, 188 U. S., 505, 507, it is said: “Indeed, it not infrequently happens that a full discharge of their duties compels boards, or officers of a purely ministerial character, to consider and determine questions of a legal nature. Due process is not necessarily judicial process.”
Much that has been already said applies with equal force to the remaining claims of plaintiff in error that the section in question denies .to the employer in question the due process of law and the equal protection of the law, in violation of the pro *247 visions of the state and federal constitutions referred to.
An additional objection is made against the validity of Section 27. It is said that the provision with reference to an injury “in the course of employment” permits an award to be made to one whose injury did not arise out of the employment. We do not think this contention is well taken. The language is found in the constitutional amendment as well as in the statute. It was plainly the intention of the framers of the amendment, and of the statute, to provide for compensation only to one whose injury was the result of or connected with the employment, and would not cover any case which had its cause outside of and disconnected with the employment, although the employe may at the time have been actually engaged in doing the work of his employer in the usual way.
Counsel for some employes of employers who have elected to make compensation under the statute have filed a brief in this case, in which they assert that Section 22 of the act under consideration, which authorizes employers under the conditions named therein to directly compensate their injured employes, is invalid because there is no provision in the act itself by which an employe of such an employer, who makes application to the board for compensation and is refused, may have any relief whatever.
The validity of Section 22 has been considered in another case not yet reported and the court is unanimously of opinion that it is a valid provision.
It must be remembered that this act was passed *248 in the exercise of the police power, fortified by the grant of power contained in the amendment to the constitution in question, which in itself is but an assertion of the police power. It is an effort to in some degree meet the requirements of new conditions which have come in an age full of revolutionary changes in industrial methods.
No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances. Mondou v. N. Y., N. H. & H. Rd. Co., 223 U. S., 1; Munn v. Illinois, 94 U. S., 113; Martin v. P. & L. E. Rd. Co., 203 U. S., 284, and Western Union Tel. Co. v. Commercial Milling Co., 218 U. S., 406.
Our constitutions were made in the contemplation that new necessities would arise with changing conditions of society.
Mr. Justice Matthews, in Hurtado v. California, 110 U. S., 516, 531, said: “As it was the characteristic principle of the common law to draw its inspiration from every fountain of j'ustice, we are not to assume that the sources of its supply have been exhausted. On the contrary, we should expect that the new and various experiences of our own situation and system will mold and shape it into new and not less useful forms.” The constitutional guaranties which existed prior to the adoption of *249 Section 35, Article II, must be considered in the light of the later expression. The former provisions cannot be construed to neutralize the positive grant of power contained in the later one. General lan-, guage in our constitutions, applicable to conditions; that prevailed in the early periods of our govern- j mental existence, must yield to new and express provisions which the people have found to be demanded by necessity and wise policy. The whole subject must be viewed in the light of present conditions and not of those under which common law doctrines were developed.
Viewed in the light of experience and of the well-determined principles which we have suggested, the act under consideration seems to us to be equitable and just in its fundamental provisions, to both the employer and employe. It places employers who pay premiums into the state fund, and those who are authorized by the commission under the law to directly compensate their injured employes, and employers who do not comply with the law, upon such terms of equality as are practicable under the circumstances and situations voluntarily assumed by each. If an employer may arbitrarily refuse to obey the law — if he may demand that the procedure as to him shall be as before the amendment and before the statute — then the attempt of the people to secure a more enlightened and scientific method of dealing with this important subject will have been in vain.
We think the section in question is plainly justified by the amendment (Section 35 of Article II of the Constitution) and by the principles declared in *250 many states and by the supreme court of the United States. Matter of Jensen v. Southern Pac. Co., 215 N. Y., 514; State, ex rel. Davis-Smith Co., v. Clausen, 65 Wash., 165; Borgnis v. Falk Co., 147 Wis., 327; Sexton v. Newark Dist. Tel. Co., 84 N. J. Law, 85; Cunningham v. Northwestern Impr. Co., 44 Mont., 180, 217, and State, ex rel., v. Creamer, 85 Ohio St., 349.
In the well-known case of Noble State Bank v. Haskell, 219 U. S., 104, which involved the constitutionality of a law enacted in the exercise of the police power to establish bank depositors guaranty funds created by levy on each of the banks, the objection as to the taking of property without due process of law and the denial of equal protection of laws was made, and the court say, at page 110: “In the first place it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. * * * It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U. S. 518. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.”
Entertaining these views we conclude that the judgment should be affirmed.

Judgment affirmed.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.