KANSAS CITY & MEMPHIS RAILWAY COMPANY *v.* HUFF.

Opinion delivered January 25, 1915.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—INJURY TO SERVANT OF RAILROAD COMPANY.—Under Kirby's Digest, § § 6652 to 6655, inclusive, where an employee on freight train service, on a railroad over thirty miles in length, works for more than sixteen hours and returns to work without eight hours rest, and is injured and sues to recover damages therefor, the defense of contributory negligence can not be set up.

2. RAILROADS—CONTRIBUTORY NEGLIGENCE—INJURY TO SERVANT OF RAILWAY COMPANY—MIXED TRAIN.—Kirby's Digest, § § 6652-6655, limiting the defense of contributory negligence in certain cases where an employee is injured by the operation of freight trains, applies to an injury received by an employee while in the operation of a mixed train which carried both freight and passengers.

3. RAILROADS—INJURY TO SERVANT—DEFENSES—CONTRIBUTORY NEGLIGENCE—DEGREE OF NEGLIGENCE.—In a suit instituted by an employee against a railway company for damages due to negligence, brought under section 1, Act 88, page 55, Public Acts 1911, the defense of contributory negligence is available unless the carrier is more negligent than the servant, or where the carrier is guilty of the violation of any law enacted for the safety of the employee, which violation contributed to the injury sued for.

4. RAILROADS—INJURY TO SERVANT—CAUSE—CONTRIBUTORY NEGLIGENCE.—In an action for damages for an injury to the servant of a rail-

way company, for the defense of contributory negligence to be unavailing under Act 88, Public Acts 1911, by reason of a violation of the provisions of Kirby's Digest, § § 6652 to 6655, relating to the hours of employment, it must be shown that the working of the servant overtime in some manner or degree contributed to the injury.

5. RAILROADS—INJURY TO SERVANT—WORKING SERVANT OVERTIME—DEFENSES.—A railroad, in an action for damages brought by an injured employee, will not be deprived of pleading plaintiff's contributory negligence, as provided in Act 88, Public Acts 1911, simply because the servant had been worked overtime.

6. RAILROADS—INJURY TO SERVANT—DEFENSES—NEGLIGENCE.—In an action by an employee of a railroad company for damages due to an injury caused by negligence, under Act 88, Public Acts 1911, his action could not be defeated by the plea of assumption of risk, nor the defense of contributory negligence, unless his negligence in performing his duties was greater than that of the other employee of defendant which caused his injury, and, further, if the fact that plaintiff had been worked overtime contributed to his injury, then the degree of his negligence was immaterial, and his right to recover could not be defeated by any proof of contributory negligence on his part.

7. RAILROADS—INJURY TO SERVANT—OBSTRUCTIONS.—Under Act 88, Public Acts 1911, in an action for damages for an injury to a servant thereof, due to negligence because of "any insufficiency of clearance of obstructions," a continuing duty rests on the railway company to remedy such obstructions, and the phrase *held* to mean anything that would impede the safe operation of a train or imperil the safety of any one engaged in its operation, and no knowledge of any failure to perform this duty imposes upon the servant any assumption of risk.

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*Dick Rice,* for appellant.

1. This action did not arise out of any of the provisions of Act No. 88 of 1911, and the doctrine of comparative negligence was, therefore, erroneously injected into the case. The injury complained of does not come within section 1 of the act, because it did not result in whole or in part from the negligence of any of appellant's officers, agents or employees; and it does not come within section 2, because the injury was not due to any defect in any car or cars, track or roadbed. The doctrine of

contributory negligence and assumed risk should be applied. 90 Ark. 543; 12 So. 88; 79 Mass. 59.

Appellee assumed the risk. 129 S. W. 532; 56 Ark. 232, 19 S. W. 600; 139 S. W. 960.

2. Appellant is not deprived of the defense of assumed risk by sections 5622-5624, Kirby's Digest. Under our law local freight trains are passenger trains. Kirby's Dig., § 6705; 71 N. W. 23; 117 S. W. 1173.

*Appellee, pro se.*

Appellant would have been liable under the law as it stood prior to the passage of Act No. 88, for it is well settled that a servant does not assume any risk arising from the negligence of the master. 77 Ark. 367; *Id.* 459; 53 Ark. 117; 70 Ark. 295; 48 Ark. 333. Appellant was not entitled to interpose the defense of contributory negligence. Kirby's Dig., § § 6652, 6654. The train in question was not a passenger train. 30 Cyc. 801, note 26; Kirby's Dig., § 6594; 52 Ark. 517; 76 Ark. 520; 94 Ark. 74; 87 Ark. 109.

SMITH, J. Appellee recovered damages for an injury sustained by him, which he detailed as follows: He was employed as a brakeman, and his run extended from Rogers to Fayetteville, the entire length of appellant's road, a distance of 104 miles, and his train was a local freight train, which did the local switching at all stations. He had instructions from the conductor at the station of Highfill to set out two cars at Springtown, and upon the arrival of the train, at the last named station, he proceeded to execute the orders previously given him, and he further testified as follows: "I cut the cars where I should, took out the box car and spotted it, came back to get the flat car, and when getting ready to take out the flat car the conductor gave me the signal to couple in the air; I had left the switch unlocked to set out the flat car, after I took out the box car and spotted it, so when he gave me the signal I went over the flat car to get to the switch to lock it, and by that time the train was in speed five or six miles an hour, and I had to run to catch it; I stumbled and fell and the train ran over my foot; I

left the switch unlocked to go back and put this other car in, as he had instructed me to set out two cars; he instructed me to set out the box car first and spot it and to set out the flat car in the clear; when I got over the flat car to get to the switch to lock it, I couldn't go west on account of the cattle guard; the cattle guard was in bad condition; was just one step to the switch, so that throwed me to go east; I thought it was the safest to go on, so I went up there, and as I got in motion with the train I hit a rock, missed my hand hold, stumbled and fell and the train run over my foot." The rock over which appellee stumbled and fell was described as being about the size of a man's head, and had been lying on the track for some days. It was shown that by the rules of appellant any employee would be discharged who left a switch unlocked.

It is said that the concurrence of the presence of the rock on the track and the premature signaling of the train to start, in view of the conductor's change in the switching directions without advising appellee of that change, caused the injury.

A number of instructions were given at the trial at the request of both appellant and appellee, and it is conceded that the instructions are conflicting, in that the court submitted questions of assumed risk and contributory negligence, and by instruction numbered 5, given at the request of appellee, eliminated those questions from the consideration of the jury. It is urged, however, that the instruction given at the request of appellant was erroneous in submitting those questions to the jury, and that appellant can not complain because the jury failed to follow instructions which should not have been given. Instruction numbered 5 was as follows:

"The court instructs the jury that if you find, from a preponderance of the evidence, that the plaintiff sustained the injuries alleged in the complaint, by reason of the defendant's conductor negligently causing the train on which plaintiff was employed as brakeman to move away from the station at Springtown at a rapid rate of speed, while the plaintiff was on the opposite side

of said train for the purpose of locking the switch and in the performance of the duties required of him, then you should find for the plaintiff.''

We will not set out the other instructions given and refused, nor the various exceptions to the action of the court in giving and refusing instructions, as our discussion of this fifth instruction indicates our view of the law of this case.

(1) Appellant's railroad is more than thirty miles in length, and appellee, after having worked for more than sixteen hours, returned to his employment without having had eight hours' rest. By sections 6652 to 6655, of Kirby's Digest, it is provided that where under the above circumstances, a servant is injured, and brings an action to recover damages resulting from any accident which occurs while the servant is so employed, the defense of contributory negligence shall not be interposed. And, in addition to the deprivation of this defense, the railroad becomes subject to a penalty to be recovered in a civil action in the name of the State.

(2) The above sections do not apply to passenger trains, and it is said that they are not applicable here because the train on which apellee was employed carried passengers. This, however, is not the test. This was a local freight train carrying a caboose, and such trains are required to carry passengers, but they are, nevertheless, freight trains. The Legislature, in exempting passenger trains, evidently had in mind that the trains on which this protection was needed were freight trains, which might be broken up in transit and which would require switching.

An act numbered 88 was passed by the General Assembly and approved March 8, 1911. See page 55, of the Public Acts of 1911. This act was entitled, ''An Act regulating liability of employers for injuries to employees,'' and by its provisions undertook to confer a cause of action upon any employee injured as the result of the existence, or concurrence, of any of those things there made the basis of a cause of action. Section 3 of this act is as follows:

"In all rights of action hereafter arising within or by virtue of this act or any provision of the same for personal injury to an employee, or where such an injury has resulted in his death, the fact that an employee may have been guilty of contributory negligence shall not bar a recovery; *provided,* that the negligence of such employee was of a lesser degree than the negligence of such common carrier, its officers, agents or employees; *provided, further,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier, its officials, agents or employees, of any law enacted for the safety of employees or persons contributed to the injury or death of such employee, and such employee shall not be held to have assumed the risk of his employment in any action arising out of any of the provisions of this act."

Section 1 of the act recites the "rights of action" referred to in section 3, but working an employee over time is not there named as one of these "rights of action." Where there is a right of action under section 1, that action can not be defeated by the defense of assumption of risk and is not, necessarily, defeated because the servant may have been guilty of contributory negligence.

An injured employee might have a cause of action which was not created by section 1 of the above act, and his right to recover damages could not be defeated by the defense of contributory negligence where the employee had been worked overtime. In such a case the jury would not inquire whether the master's negligence was greater than that of the servant, nor, indeed, would any inquiry be made about the servant's negligence, for that would be immaterial. The defense of assumption of risk would remain, but not that of contributory negligence.

(2) But if a right of action grew out of this Act 88, the defense of assumed risk is denied the master, and the defense of contributory negligence is not available unless the negligence of the servant is greater than that of the master. But the right to plead contributory negligence in such action is further limited by the proviso

"that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier, its officials, agents or employees, of any law enacted for the safety of employees or persons, *contributed* to the injury or death of such employee." This last proviso, limiting the right to plead contributory negligence, does not read that that defense may not be interposed where the injury occurs *while* any law enacted for the safety of the employee is being violated, but its language is that such defense may not be interposed if the violation of such law contributed to the injury or death of such employee. We conclude, therefore, that in any suit dependent upon section 1, of Act No. 88, the defense of contributory negligence is available unless the carrier is more negligent than the servant, or where the carrier is guilty of the violation of any law enacted for the safety of the employee, which violation contributed to the injury sued for.

(4-5) If one would avail himself of the benefits of this Act No. 88, he must come within its terms, and we can not read into this act the provisions of sections 6652 to 6655, of Kirby's Digest, for the purpose of depriving the carrier, against which suit is brought under the provisions of this Act No. 88, of the defense of contributory negligence, unless it be shown that working the servant overtime in some manner or degree contributed to his injury. In other words, the question of fact should be passed upon by the jury whether working the servant overtime in any manner contributed to his injury, and if the jury should find that it did, then the defense of contributory negligence is not available. But under the facts of this case the court should not have assumed, as a matter of law, that the defense of contributory negligence was not available to the appellant simply because the servant had in fact worked overtime.

Most of the legislation on this subject is modeled after the Federal Employer's Liability Act of April 22, 1908, and among the States which have enacted legislation patterned after that act is the State of Michigan,

and, while our act is not a copy of the Michigan act, it is so similar to the one of that State as to suggest that it served as a model for our statute. Still, changes of a nature so material were made that we can not apply the rule that, in adopting this statute from Michigan, we intended also to adopt the construction given the statute by the courts of that State.

Section 1, of Act No. 88, reads as follows:

"That every common carrier by railroad in this State, shall be liable for all damages to any person suffering injury while he is employed by such carrier, or, in case of the death of such employee, to his or her personal or legal representative, for the benefit of the surviving widow or husband and children of such employee; if none, then to such employee's parents; if none, then to the next of kin of such employee, for such injury or death resulting in whole or in part for the negligence of any of the officers, agents, or employees of such carrier, or by reason of any insufficiency of clearance of obstruction, of strength of roadbed and tracks or structures, or machinery and equipment, of lights and signals in switching and terminal yards, or rules and regulations and of number of employees to perform the particular duties with safety to themselves and their co-employees, or of any other insufficiency; or by reason of any defect, which defect is due to its negligence in its cars, engines, motors, appliances, machinery, track roadbed, boats, works, wharves or other equipment."

This legislation was first enacted in jurisdictions where the common-law rule in reference to fellow-servants was in force, and in the case of *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492, the court construed the phrase, "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." This quotation appears in the Federal Employers' Liability Act, and it will be observed that our act copies that phrase. Interpreting the section of the Federal statute in which the above phrase appears the Supreme Court of the United States in the above cited case said:

"This clause has two branches; the one covering the negligence of any of the officers, agents, or employees of the carrier, which has the effect of abolishing in this class of cases the common-law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff;   *   *  , *"

There was the same necessity in some other jurisdictions for language of this character to abolish the common-law rule in regard to fellow-servants. It is true there was no necessity in this State, as the common-law rule on this subject had been changed by previous legislation. While there was no necessity under the law of this State for this phrase to change the common-law rule in regard to fellow servants, yet the language above quoted creates a right of action under this Act No. 88, where the servant's injury was caused by the negligence of a fellow servant.

(6) Having indicated our construction of this Act No. 88, there remains only the duty of applying that interpretation to the issues of this case. We think the proof is sufficient to require the submission to the jury of the question whether, under the circumstances, the conductor was negligent in signaling the train to start in the manner in which he did, after having told appellee that two cars were to be spotted, and that without advising him of the change in the switching directions. No defect in the cattle guard was shown. If this conduct of the conductor prevented appellee, while himself in the exercise of due care, from performing his duties with safety to himself, then the conductor's act was a negligent one, provided it was the proximate cause of the injury. The jury should be told that, if these issues were found for appellee, his right of action could not be defeated by the defense of assumption of risk, nor by the defense of contributory negligence, unless the negligence of appellee in performing his duties, in the manner in which he did, was greater than that of the conductor, and subject to the further qualification that, if they should find that the fact that appellee had worked overtime contributed to his injury, then the degree of his negligence

was immaterial and his right to recover could not be defeated by any proof of contributory negligence on his part.

We think the presence of the rock is a fact to be considered by the jury in determining the question of appellant's negligence and to be given such weight, if any, as it should have in the determination of that question. But we do not agree with appellee's contention that the mere presence of the rock itself constituted a right of action under section 1 of Act 88. Appellee's view is that the presence of the rock constituted an "insufficiency of clearance of obstructions." The phrase quoted evidently relates to obstructions of a permanent character. This view is sustained by the opinion of the Supreme Court of Georgia, construing a similar statute in that State, in the case of *Hubbard* v. *Central of Georgia Railway,* 63 S. E. 19, 19 L. R. A. (N. S.) 738.

(7) Prior to this legislation the law was that the carrier's failure to exercise care to make the servant's place safe did not sustain the right of recovery, where the servant was aware of this failure and pursued his employment after acquiring this knowledge without any promise of rectification or repair. Under this act a continuing duty rests upon the carrier to remedy "any insufficiency of clearance of obstructions," and no knowledge of any failure to perform this duty imposes upon the servant any assumption of risk, and we think the phrase refers to anything that would impede the safe operation of a train, or imperil the safety of one engaged in its operation.

The fifth instruction set out above does not conform to the views here expressed, and the judgment of the court below is, therefore, reversed and the cause will be remanded for a new trial.

McCULLOCH, C. J., (dissenting). I think the court is wrong in holding that, in a suit based on the Employers' Liability Act of this State (approved March 8, 1911), where the injury to the servant occurred during a period of time he was being overworked in violation of the provisions of Kirby's Digest,

§ 6654, it is necessary, in order to eliminate the defense of contributory negligence, to show that the fact of the servant being worked overtime contributed to the injury. The court has not, I think, correctly construed the last proviso of section 3 of the Employers' Liability Act. That provision obviously refers to a violation by the employer of some affirmative duty imposed by statute for the safety of employees, and it entirely abolishes the doctrine of contributory negligence in cases where the injury is caused by a violation by the carrier of such affirmative statutory duty. It has no reference to the statute which forbids the working overtime of railroad employees, for that statute itself declares that the defense of contributory negligince shall not be interposed in an action brought to recover damages resulting from an injury which occurs to an employee while detained in service more than the prescribed number of hours.

The act of 1911 was passed in the light of existing statutes and repealed them only to the extent of repugnancy. There is no repugnancy whatever between the two statutes and they may be read together in perfect harmony. It is a mistake, in my judgment, to undertake to subordinate the provisions of the statute concerning working employees overtime, to the new statute, and it defeats the wholesome effect of both, for the purpose of the lawmakers in the first statute was, in cases where a railroad employee is injured while being worked evertime, to shut off all inquiry as to contributory negligence on his part, and there is no indication of an intention on the part of the Legislature in passing the act of 1911, to change that rule in cases brought under that act. The view that the court now takes completely nullifies the old statute about working employees overtime, so far as concerns any application of it to a suit under the Employers' Liability Act, for it is impossible to prove that working overtime caused the injury. That is the reason why the Legislature passed the first statute, because they recognized the fact that an employee who had worked overtime was not in a condition to do so, and if he was in-

jured there should be no inquiry as to the fact of his being guilty of negligence.

My conclusion, therefore, is that there was no prejudicial error in giving instruction No. 5, for it is undisputed that appellant was, when he was injured, being worked overtime contrary to the provisions of section 6654, and the question of contributory negligence was thus entirely eliminated from the case.