BOURLAND *v.* BAKER.

Opinion delivered December 15, 1919.

1. HUSBAND AND WIFE—WIFE'S TORTS—HUSBAND'S LIABILITY.—The common law rule that the husband is liable for the wife's torts has been abrogated by the married woman's act (Acts 1915, page 684).

2. APPEAL AND ERROR — NEGLIGENCE — INSTRUCTION.—Where there was no evidence to support some of the allegations of negligence in a personal injury action, an instruction to find for plaintiff if you find from the evidence that plaintiff was injured as a result of defendant's negligence as charged in the complaint, was not objectionable as authorizing the jury to find negligence as charged though not established by the evidence.

3. APPEAL AND ERROR—INVITED ERROR.—One who requests and obtains instructions submitting separately each allegation of negligence is in no position to complain of an instruction that submitted all of the allegations of negligence, whether supported by evidence or not.

4. TRIAL—CONSTRUCTION OF INSTRUCTIONS AS A WHOLE.—An instrucstruction on the negligence of an automobile driver *held* not to impose an extraordinary degree of care on such driver, when considered in connection with other instructions.

5. MUNICIPAL CORPORATIONS—COLLISION WITH PEDESTRIAN—INSTRUCTION.—An instruction exempting an automobile driver from liability for injuries to a pedestrian if she temporarily took her eyes off the street in front to give attention to her children in the automobile was properly refused since such act might or might not have been negligent.

MUNICIPAL CORPORATIONS—DRIVING ON WRONG SIDE OF STREET—INSTRUCTION.—An instruction to the effect that if the jury found from the evidence that defendant operated her automobile in a negligent manner upon the street as charged in the complaint, and plaintiff's injuries were the result of such negligence, they should find for plaintiff, was not objectionable as submitting the issue as to liability of defendant if she was driving on the wrong side of the street where there was no evidence that she was driving on the wrong side.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed in part.

*James B. McDonough,* for appellants; *J. Sam Wood,* of counsel.

1. James Bourland, the husband, is not liable for the torts of his wife committed in his absence. Since the married woman's act of 1915, the husband is no longer liable. 102 Ark. 351; 64 *Id.* 381; 44 *Id.* 401. All these cases are based on the law prior to 1912. The act of 1915 strike down every reason for the ruling that the husband was liable. 124 Ark. 167; 145 N. Y. S. 708; 65 Ill. 129. See also 94 Pac. 36; 37 S. W. 138; 99 N. W. 818; 44 Pac. 833; 21 Cyc. 1352, note 86; 65 N. E. 770; 140 Pac. 1022; 49 Atl. 889. The reason of the rule having ceased, the liability also ceased. 104 La. 496; 118 Miss. 58; 120 Mass. 89; 41 Mich. 214.

2.   The court erred in its instructions, as there is no evidence to support them.   69 Ark. 130; 87 *Id.* 243; 89 *Id.* 147; 82 *Id.* 243; 82 *Id.* 547; 41 *Id.* 382; 63 *Id.* 177; 4 Craw-'ford's Digest, 4997-9; 168 S. W. 129.

3.   It was especially error to give No. 7, as it does not clearly point out the obligations and duties of pedestrians and drivers of motor cars on the streets.   143 Pac. 743, par. 10; 183 *Id.* 358; 152 *Id.* 319.

4.   It was error to admit the evidence of Dr. Rose, detailing the statements of James Bourland.

5.   It was error to refuse No. 12 for defendants. 104 Atl. 749.

*Edwin Hiner,* for appellee.

1.   The husband is still liable, as he is not released by the act of 1915.   64 Ark. 381; 92 *Id.* 486; 102 *Id.* 351 If the act had been intended to relieve the husband of lia bility, it would have said so, but it did not, and the hus band is still liable.

2.   There is no error in the instructions given r refused; they correctly state the law.

HUMPHREYS, J.   Appellee instituted suit agaist appellants in the Sebastian Circuit Court, Fort Smih District, to recover $11,000, on account of an injury e-ceived by him through the alleged negligent operaton of an automobile by appellant, Queen Bourland, wif( of appellant, James Bourland.   The allegations of negligence in the complaint consisted, first, in driving the car at a high and dangerous rate of speed; second, in driing it on the left, instead of the right-hand, side of the street, in violation of a city ordinance; third, in drivig it without giving the proper warning or keeping the poper lookout when approaching appellant.

Appellants filed answer, denying the material allegations in the complaint, and pleading the negligence of appellee as the proximate cause of the injury.

The cause was submitted to a jury, upon the pleadings and evidence, and a verdict and judgment rendered

in favor of appellee for $2,000, from which an appeal has been duly prosecuted to this court.

Appellee was injured by an automobile driven by appellant, Queen Bourland. When the injury occurred, he was walking south on the east side of North 13th street, about midway between the suburban railway and North O street. Queen Bourland was on the front, and her little boy and infant on the back seat of the chummy roadster she was driving. She was on the same side of the street and going the same direction appellee was walking. The street is straight, between the suburban railway and O street, and the distance between the two points about 200 yards. Appellee was near the curbing on the east side of the street. When struck, his legs were thrown under the car and his body on the outside, with his head lying very near the curbing. The car stopped just as the hind wheel reached him. He was severely injured, and, as no question is made in regard to the amount of damages recovered, it is unnecessary to set out the nature of the injury.

The evidence on behalf of appellee tended to show that the car was being rapidly driven and approached and struck him suddenly, without signal or warning, about two o'clock in the afternoon of September 17, 1918; that he heard the car, stepped to the east, giving almost the entire street, and did not look back because he expected it to pass around and not strike him; that the place where there should have been a sidewalk was rough and grown up in weeds; that the street was paved and that he had chosen the east side of the street near the curbing upon which to travel, because automobiles usually traveled on the right-hand or west side of the street.

The evidence of appellants tended to show that, at the time of the injury, appellant, Queen Bourland, was driving her car at a slow rate of speed; that when she reached and crossed the suburban, she looked in front and saw nothing; that she then looked back at the baby and told her boy to sit down; that she again glanced to the front and observed appellee immediately in front of her; that

he had stepped in front of the car suddenly; that she did not see him at all until he stepped in front of the car; that she instantly shut off the engine, put on the brakes with both feet and stopped the car; that the front wheel ran over appellee, but that the hind wheel stopped just as it reached him.

It is first insisted by appellants that there is no foundation in the allegations and evidence justifying the rendition of a judgment against appellant, James Bourland, the husband of Queen Bourland. The verdict was returned and judgment rendered against James Bourland on the sole ground that a husband in this State is responsible for his wife's torts. At the common law, a husband was liable for the torts of his wife committed in his absence. That rule of liability is still in force in Arkansas, unless abrogated by Act 159, Acts of the Legslature of 1915, known as the Married Woman's Act. The reason existing for the rule at common law was the legal unity incident to the marriage relationship. It was reasoned that, on account of the unity, the husband could absolutely control his wife in and out of his presence. It followe that, because of this control, he could prevent his wif from committing a tort on another, even in his absen The Married Woman's Act of 1915, as construed in th case of *Fitzpatrick* v. *Owens,* 124 Ark. 167, had the *-* fect of absolutely and completely destroying the leal unity founded upon the nuptial contract. The act as effectually severed the legal unity between husband nd wife in this State. In holding that the emancipatio of the wife was so complete that the wife might sue the us-band for a tort committed by him on her person, this court said, in the case of *Fitzpatrick* v. *Owens, s pra,* that: "These enactments (referring to the Marrie Wo-man's Act antedating the Act of 1915) left but little n the way of restrictions upon the rights of married women, but the Legislature deemed it proper to provide further legislation to completely emancipate her, and they did so by this statute (referring to the Married Woma 's Act of 1915) which declares its purpose in the broadest terms

to 'remove the disabilities of married women.' An analysis of the language of the statute shows that the Legislature meant to complete the work of emancipation and to give married women all the rights and remedies possessed by unmarried women. The words 'to sue and be sued', when considered by themselves, merely enlarge the remedies of a married woman and do not enlarge her rights, but in considering the significance of those words we must do so in connection with the words which precede and which follow, and undoubtedly the use of those words serves to give a remedy for all the rights found to have been enlarged by the preceding words and those which follow. Now, the preceding words confer, in unqualified terms, the right of the married woman 'to contract and be contracted with,' and the words which follow declare in the very broadest terms her right 'in law and equity' to 'enjoy all rights and be subjected to all the laws of the State as though she were a *feme sole.*' If this language be given any effect at all in the light of preceding statutes enlarging the rights of the married woman, it necessarily means that a married woman is to enjoy in law and equity all the rights which she would enjoy if she still remained a single woman, and that with respect to those rights she may sue and be sued. * * * It was evidently meant to confer upon her the enjoyment of those rights and remedies, even against her husband, the same as if she were unmarried."

The legal unity, which was the reason of the rule fixing liability on the husband for his wife's torts, having been swept away by the act, the liability is swept away. The reason being dissolved, the rule can not exist. It was therefore error to refuse to instruct the jury peremptorily to return a verdict for appellant James Bourland.

It is insisted that the court erred in giving instruction No. 4. The instruction is as follows: "Therefore, if you find from the evidence that the defendant, Queen Bourland, operated her car in a negligent manner at the time the plaintiff was injured, as charged in plaintiff's

complaint, and that his injuries were the result of said negligence, you must find for the plaintiff, unless it affirmatively appears from the evidence that the plaintiff was at the time of his injury himself guilty of negligence contributing to the injury."

The instruction is assailed because, according to appellant's interpretation thereof, it submitted **all the** allegations of negligence set up in the complaint to the jury for consideration, whether supported by evidence or not. It is true evidence was not introduced in support of every allegation of negligence in the complaint. The trend of the evidence, however, limited the issues to whether the injury resulted from fast driving, failure to give a signal of warning, failure to keep a proper lookout, or whether due to appellee's own negligence; and, in the absence of specific objections to the general terms in which the allegations of negligence were submitted, it will be presumed that the jury considered only such grounds of negligence as were supported by the evidence. No specific objections were made to the instructions. Again, appellant, Queen Bourland, requested and obtained instructions submitting separately each allegation of negligence contained in the complaint, so said appellant is in no position to complain.

The instruction is also assailed on the ground that it imposed an extraordinary degree of care upon said appellant to prevent the injury. It is contended the instruction must be read in connection with the allegation of the complaint to the effect that appellant, Queen Bourland, injured appellee "by her failure to keep a vigilant and constant lookout for persons lawfully upon the streets." This is only an allegation in an exaggerated form of a lack of ordinary care, and can not be treated as an instruction imposing an extraordinary degree of care upon said appellant. No such inference could have been indulged by the jury in the face of positive instructions to the contrary. Instructions Nos. 2 and 7 necessarily enlightened the jury in this regard. The instructions referred to were as follows:

"Negligence, as defined and used in these instructions, is a failure to exercise ordinary care. Ordinary care is such care as a reasonably prudent and careful person would be expected to exercise under the same or like circumstances."

"The rights of pedestrians and drivers of motor cars and other vehicles have equal rights to the use of the streets of the city. It is the duty of the one to use ordinary care and caution to prevent injury to another. It is likewise the duty of the other to use ordinary care and caution to avoid being injured."

It is also contended by appellant, Queen Bourland, that the court erred in refusing to give instruction No. 11, requested by her. That instruction exempted Queen Bourland from liability if she temporarily took her eyes off the street in front to give attention to her children while driving along. Such an act on her part might, or might not, have been negligent, dependent upon all the circumstances in the case. The instruction was properly refused.

It is also contended that the case was erroneously submitted upon the theory that appellant, Queen Bourland, was liable for the injury if driving on the left-hand side of the street. It was alleged in the complaint that she was driving on the left-hand side of the street, contrary to an ordinance of the city. No such proof was made, and, under our interpretation of instruction No. 4, no such issue was submitted to the jury.

The judgment is affirmed as to Queen Bourland, but is reversed and the cause dismissed as to James Bourland.