HARLOW v. RYLAND.
Civil Action No. 1707.

District Court, E. D. Arkansas, W. D.
July 6, 1948.

Rowell, Rowell & Dickey and Hendrix Rowell, all of Pine Bluff, Ark., for plaintiff.

Bridges, Bridges, Young & Gregory and Henry W. Gregory, Jr., all of Pine Bluff, Ark., for defendant.

TRIMBLE, District Judge.

It is stipulated by counsel for the parties, that the plaintiff is the aunt of the defendant, related within the third degree of consanguinity, and while riding in a car owned and operated by him on the highway in Arkansas, she was injured in an accident. She was a non-paying guest and the defendant was not a public carrier.

Defendant moves to dismiss the complaint, basing his motion on the provisions of Section 1304 of Pope's Digest of the Statutes of Arkansas. Plaintiff filed a response to this motion, alleging the act unconstitutional as being in violation of Article II, Sections 8 and 13 of the Constitution of Arkansas, and the Fourteenth Amendment to the Constitution of the United States.

After providing, with exceptions not material here, that no guest shall have a cause of action for damages, the statute provides:

"and in no event shall any person related by blood or marriage within the third degree of consanguinity or affinity to such owner or operator, or the husband, widow, legal representatives, or heirs of such person, have a cause of action for personal injury, including death resulting therefrom, against such owner or operator while in, entering, or leaving such motor vehicle, provided this act shall not apply to public carriers."

The Supreme Court of Arkansas has never passed upon the validity of this provision of Section 1304 of Pope's Digest. In the case of Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961, 963, the court said:

"The decision of this case must, therefore, depend upon the validity of acts Nos. 61 and 179 of the Acts of 1935. * * * Under the reasoning of these and other cases cited in the note to the text quoted, it might be that Act No. 179 is unconstitu-

tional, whereas Act No. 61 is valid, the difference being that Act No. 179 denies the right of recovery to certain persons under any circumstances, whereas Act No. 61 denies the right of recovery to all persons riding as guests 'unless such vehicle was wilfully and wantonly operated in disregard of the rights of others.' * * * But if Act No. 61 is constitutional and is applicable to the facts of this case, it is unnecessary to consider Act No. 179 or to pass upon its constitutionality, for the reason that Act No. 61 defeats a recovery in this case."

From this it is clear that the statement of the court "it might be that Act No. 179 is unconstitutional," and the reasons assigned therefor, are obiter dicta.

Again in Tilghman v. Rightor, 211 Ark. 229, 199 S.W.2d 943, 945, this same statute was under consideration, but not the particular point at issue here. The court there said:

"An exception was saved to the action of the court in reading § 1304, Pope's Digest, but there was no error in doing so. It is the law and is unambiguous, and it was the duty of the court to declare the law, and the reading of the statute was the method employed in doing so."

But the provision of the section under consideration here, not being within the purview of that case, and the court not being required to rule thereon, that holding would not be binding on the court here. Therefore, so far as the Supreme Court of Arkansas is concerned the question is an open one.

■■■ It is a well settled principle of law followed by all courts, that there is a presumption in favor of the constitutionality of a statute. When such questions are presented courts give them the most careful consideration, and never declare a statute void unless its invalidity is beyond reasonable doubt. Such invalidity must appear beyond a mere possibility, or beyond even a strong probability. If there is a doubt in the mind of the court as to its constitutionality, the statute must be held valid. Kelso v. Bush, Judge, 191 Ark. 1044, 89 S.W.2d 594, Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696, 10

Ann.Cas. 525; 11 Am.Jur. 718, 719, Secs. 91 and 92, Hines v. Hook, 338 Mo. 114, 89 S.W.2d 52, 11 Am.Jur. 1088, 1089; O'Gorman v. Hartford Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324, 72 A.L.R. 1163.

■ In the case of Halter v. Nebraska, supra, Mr. Justice Harlan, speaking for the court, said [205 U.S. 34, 27 S.Ct. 421]:

"In our consideration of the questions presented we must not overlook certain principles of constitutional construction, long ago established and steadily adhered to, which preclude a judicial tribunal from holding a legislative enactment, Federal or State, unconstitutional and void, unless it be manifestly so. Another vital principle is that, except as restrained by its own fundamental law, or by the supreme law of the land, a state possesses all legislative power consistent with a republican form of government; therefore each state, when not thus restrained and so far as this court is concerned, may, by legislation, provide not only for the health, morals, and safety of its people, but for the common good, as involved in the well-being, peace, happiness, and prosperity of the people."

■ Federal courts are slow to hold the statutes of a state in conflict with the state constitution, where there has been no decision of the court of last resort of that state upon that issue. Mr. Justice Hughes, speaking for the Supreme Court in Louisville & N. R. Co. v. Garrett, 231 U.S. 298, 305, 34 S.Ct. 48, 51, 58 L.Ed. 229, said:

"So far as we are advised, the court of appeals of Kentucky has not passed upon the validity of the act in question; and this court has often expressed its reluctance to adjudge a state statute to be in conflict with the constitution of the state before that question has been considered by the state tribunals,—to which it properly belongs,—unless the case imperatively demands such a decision. Pelton v. Commercial National Bank, 101 U.S. 143, 144, 25 L.Ed. 901; Michigan Cent. R. R. v. Powers, 201 U.S. 245, 291, 26 S.Ct. 459, 50 L.Ed. 744."

The court then held that in that case the argument against the statute was not

of that compelling character, declining to hold the act in conflict with the state constitution.

Plaintiff earnestly contends that this statute is in contravention of Article II, Section 13, of the Constitution of the State of Arkansas, wherein that section provides:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character * * *."

 He assumes that a person has some vested property right in the possibility of an injury at some uncertain future date, and that this Section 1304, takes away from the class of persons named, all remedy for "injuries or wrongs [which] he may receive in his person * * *." But a person has no vested property right, no vested interest in any rule of the common law. The common law is no sacred institution, and stands in no stronger position than any other law. Rights of property created by the common law which have vested cannot be taken away without due process. But the law itself being but a rule of conduct may be changed at the will of the legislature. The only limitation to prevent such a change would be a constitutional limitation. Munn v. Illinois, 94 U.S. 113, 134, 24 L.Ed. 77; Second Employers' Liability Cases, Mondow v. New York, N. H. & H. R. Co., 223 U.S. 51, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; Martin v. Pittsburgh & L. E. R. Co., 203 U.S. 284, 294, 27 S.Ct. 100, 51 L.Ed. 184, 8 Ann.Cas. 87; Western Union Tel. Co. v. Commercial Milling Co., 218 U.S. 406, 31 S.Ct. 59, 54 L.Ed. 1088, 36 L.R.A.,N.S., 220, 21 Ann.Cas. 815; Shea v. Olson, 186 Wash. 700, 59 P.2d 1183, 111 A.L.R. 998. In the case of Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65 A.L.R. 939, the Supreme Court said:

"We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object. See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116, 47 S.Ct. 509, 71 L.Ed. 952, 51 A.L.R. 1376; New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct.

247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann. Cas.1917D, 629; Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642; Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 74, 27 S.Ct. 412, 51 L.Ed. 708."

And in 12 Am.Jur. 277, Sec. 580 it is said:

"The ' fact that one of the tests of due process is the common law as it existed at the time of the establishment of our civil and political institutions does not prevent a change in the law as it then existed. There is no constitutional right to have all general propositions of law once adopted remain unchanged."

"A right of action for a tort to happen in the future is not property, and may be abrogated by the Legislature." Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581, 583, 74 A.L.R. 1189; Steers v. Kinsey, 68 Ark. 360, 58 S.W. 1050.

The legislature of the State has more than once enacted statutes in derogation of and for the outright repeal of common law rules, and the setting aside of common law rights. In the case of State v. Boney, 1922, 156 Ark. 169, 177, 245 S.W. 315, 317, the Supreme Court, in passing upon the validity of an act of the legislature imposing a tax on dower, discusses the legislative power over the right of dower as follows:

"The estate of dower appears to be as old as the common law; but so also is the right of an heir to inherit from an ancestor; and the lawmaking power possesses as plenary control over the one as it has over the other. The Legislature has the right to change the law of dower and has done so more than once, usually by enlarging the common-law right of dower. The Legislature certainly has the right to diminish or to abolish dower, and as the right to take dower is a privilege, which the Legislature may give or may withhold as it pleases, it follows that, in granting the right, the Legislature may impose a tax * * * against the person to whom it is given."

See also Sec. 11,147 of Pope's Digest, denying to railroad companies the right of the defense of want of negligence on its

492

part. The validity of this act has been upheld by the Court. Helena Southwestern Railway v. Coolidge, 1925, 169 Ark. 552, 275 S.W. 896, and cases cited. The married woman's act, act 159 of the Acts of 1915, and upheld in Borland v. Baker, 141 Ark. 280, 216 S.W. 707, 20 A.L.R. 525. The abolition of the fellow servant rule. Ozan Lumber Co. v. Biddie, 87 Ark. 587, 113 S.W. 796. The comparative negligence statute. Kansas City, & M. R. Co. v. Huff, 116 Ark. 461, 173 S.W. 419.

In the case of Steers v. Kinsey, supra, the Supreme Court of Arkansas, had before it the question of vested rights, and said [68 Ark. 360, 58 S.W. 1052]:

"The only question that remains, then, is whether the parties who brought the attachment suits acquired vested rights in the land by the bringing of the suits and the levy upon the lands. Now, a vested right 'must be something more than a mere expectation based upon the anticipated continuance of existing laws. It must have become a title, legal or equitable, to the present or future enjoyment of property,' in some way or another. Black Const. Law. 430; Sutherland, Stat. Const. § 164. But parties have no vested rights in remedies or matters of procedure, and we see nothing in these attachment proceedings that constituted a vested right on the part of the plaintiffs therein to the property attached. The attachments were levied upon the land after the mortgage under which the Arkansas City Improvement Company holds had been executed and recorded, and we think it was within the power of the legislature to give to such mortgage the effect intended by the parties thereto, by curing the formal defect in the acknowledgment." See also Jenkins v. Jenkins, 144 Ark. 417, 420, 222 S.W. 714.

▪ The attitude of the United States Supreme Court toward legislation of this character has been quite liberal. It has been held in a number of cases that the state legislature may create new rights or abolish old ones, and can make reasonable classifications as to the applicability of such legislation. Silver v. Silver, supra, Arizona Employers' Liability Cases, 1919, 250 U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058,

6 A.L.R. 1537; Second Employers' Liability Cases, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann. Cas.1917D, 629; Hanfgarn v. Mark, 302 U.S. 641, 58 S.Ct. 57, 82 L.Ed. 498."

▪ Whether the classification "any person related by blood or marriage within the third degree of consanguinity or affinity to such owner or operator" is a reasonable one is for the wisdom of the legislature. Upon this subject of classification, the Supreme Court spoke authoritatively in Lindsley v. Natural Corbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 340, 55 L.Ed. 369, Ann.Cas.1912C, 160. In that case as here it was the contention that the classification was arbitrary, and consequently denied the equal protection of the laws to those whom it affected. There the court said:

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Bachtel v. Wilson, 204 U.S. 36, 41, 27 S.Ct. 243, 51 L.Ed. 357, 359; Louisville & N. R. Co. v. Melton, 218 U.S. 36, 30 S.Ct. 676, 54 L.Ed. 921; Ozan Lumber Co. v. Union County Bank, 207 U.S. 251, 256, 28 S.Ct. 89, 52 L.Ed. 195, 197; Munn v. Illinois, [supra], 94 U.S. 113, 132, 24 L.Ed. 77, 86; Henderson

Bridge Co. v. Henderson City, 173 U.S. 592, 615, 19 S.Ct. 553, 43 L.Ed. 823, 831."

In the case of Silver v. Silver, 280 U.S. 117, 123, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939 the court had before it a statute somewhat similar to this one, and there the court said:

"Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination, and, if found, may well be the basis of legislative action further restricting the liability. *Its wisdom is not the concern of courts.*

"It is said that the vice in the statute is not that it distinguished between passengers who pay and those who do not, but between gratuitous passengers in automobiles and those in other classes of vehicles. But it is not so evident that no grounds exist for the distinction that we can say a priori that the classification is one forbidden as without basis, and arbitrary. See Clarke v. Deckebach, 274 U.S. 392, 397, 47 S.Ct. 630, 71 L.Ed. 1115.

"Granted that the liability to be imposed upon those who operate any kind of vehicle for the benefit of a mere guest or licensee is an appropriate subject of legislative restriction, there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none. Patsone v. Pennsylvania, 232 U.S. 138, 144, 34 S.Ct. 281, 58 L.Ed. 539; Miller v. Wilson, 236 U.S. 373, 382, 384, 35 S.Ct. 342, 59 L.Ed. 628, L.R.A.1915F, 829; International Harvester Co. v. Missouri, 234 U.S. 199, 215, 34 S.Ct. 859, 58 L.Ed. 1276, 52 L.R.A.,N.S., 525; Barrett v. Indiana, 229 U.S. 26, 29, 33 S.Ct. 692, 57 L.Ed. 1050."

The act under attack here is clearly within the police power of the state. The due process and equal protection clause of the state and federal constitutions do not apply to laws enacted by a state legislature in the exercise of its police power, and there is but one limitation on the right of a state to enact a statute tending to promote the health, peace, morals, education, good order, and welfare of the people of the state, and that is that it must reasonably tend to correct some evil and promote some interest of the state, and not violate any direct or positive mandate of the constitution.

The legislature in exercising the police power is vested with a large discretion to determine what the public interest demands and what measures are necessary to secure and promote such interest. In determining whether a law comes within the police power of the state, it is not incumbent upon the court to find the actual existence of facts which would justify the legislation; but if a state of facts which would justify the legislation can reasonably be conceived to exist, the court must presume that it did exist and that the law was passed for that purpose. Shea v. Olson, supra.

In O'Gorman & Young v. Hartford Fire Ins. Co., 282 U.S. 251, 257, 51 S.Ct. 130, 132, 75 L.Ed. 324, 72 A.L.R. 1163, the Supreme Court said:

"The statute here questioned deals with a subject clearly within the scope of the police power. We are asked to declare it void on the ground that the specific method of regulation prescribed is unreasonable and hence deprives the plaintiff of due process of law. As underlying questions of fact may condition the constitutionality of legislation of this character, the presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute. It does not appear upon the face of the statute, or from any facts of which the court must take judicial notice, that in New Jersey evils did not exist in the business of fire insurance for which the statutory provision was an appropriate remedy. The action of the legislature and of the highest court of the State indicates that such evil did exist. The record is barren of any allegation of fact tending to show unreasonableness." (Citing cases.)

The enactment of Section 1304 of Pope's Digest has not taken away all remedies from this class of persons, for there remains to them any right of action they may have against third persons who

494

may have contributed to or caused their injury.

From the statute itself, from any state of facts of which the court might take judicial notice, and from the record in the case the court cannot say that there did not exist at the time of the enactment of this statute and does not exist now a state of facts constituting a public evil which the legislature considered at the time of its enactment and which the statute is designed and might reasonably be expected to correct. As said by other courts, the wisdom of such a statute is not the concern of the courts.

This act not having been passed on by the court of last resort of the state, and the court not being able to say that the statute is manifestly violative of either the State or Federal Constitutions, and for other reasons stated, the contention of the plaintiff that the statute is unconstitutional and void will be denied, and the motion of the defendant to dismiss the complaint will be granted.